PEOPLE v. JOHN H. WOODBURY DERMATOLOGICAL INSTITUTE.

(Supreme Court, Appellate Division, First Department. March 20, 1908.)

1. PHYSICIANS AND SURGEONS—REGISTRATION, CERTIFICATE OR LICENSE—AD-VERTISING TO PRACTICE WITHOUT—"PERSON."

Medical Law, Laws 1907, p. 646, c. 344, § 15, makes any person, not a registered physician, who shall advertise to practice medicine, guilty of a misdemeanor. Statutory Construction Law, Laws 1892, p. 1486, c. 677, § 1, provides that that chapter is applicable to every statute unless its general object or the context or other provision of law indicates that a different meaning or application is intended than called for by that chapter, and section 5 (page 1487) provides that the term "person" includes a corporation. Membership Corporation Law, Laws 1895, p. 354, c. 559, art. 6, substantially re-enacts Laws 1889, p. 93, c. 95, § 1, authorizing the incorporation of hospitals, etc., or homes for aged and indigent persons. Section 5 (page 94) provides that the certificate of incorporation might prescribe the qualification of members and the matter of adherence to any particular school or theory of medical or surgical treatment. Section 4 exempts the corporate property from taxation to the extent used for the care, etc., of persons needing medical and surgical treatment, and on condition that the corporation should render same to poor persons without charge. Section 8 (page 95) provides that the by-laws might specify what classes of persons might receive treatment from the hospital, etc. *Held,* that though a corporation authorized to receive and care for persons requiring medical or surgical treatment, either gratuitously or for hire, may advertise its business without subjecting itself to liability for violation of Medical Law, § 15, yet a corporation whose certificate limits its business "to manufacturing chemical preparations and printing, publishing, and selling books and pamphlets relating to the same, and advertising the same," does not come within the exception contained in Statutory Construc-

tion Law, § 1, and it is prohibited by Medical Law, § 15, from advertising the practice of medicine.

Per Laughlin, J., and Patterson, P. J.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5322–5335; vol. 8, p. 7752.]

2. SAME—"PRACTICES MEDICINE."

Medical Law, Laws 1907, p. 636, c. 344, § 1, subd. 7, provides that a person practices medicine within the meaning of that act who holds himself out as being able to diagnose, treat, operate, or prescribe for any human disease, pain, injury, deformity, or physical condition, and section 2 (page 637) provides that no person shall practice medicine unless registered or licensed, as therein provided. Section 15 (page 646) makes any person, not a registered physician, who shall advertise to practice medicine, guilty of a misdemeanor. Statutory Construction Law, Laws 1892, p. 1486, c. 677, § 1, provides that that chapter is applicable to every statute, unless its general object or the context or other provision at law indicates that a different meaning or application is intended than that required to be given by that chapter, and section 5 (page 1487) provides that the word "person" includes a corporation. *Held*, that the medical law applies to all persons, natural or artificial, and, since under it a corporation never could become legally authorized to practice medicine, having advertised to practice, the corporation is guilty of a violation of section 15.

Per Ingraham and Clarke, JJ.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5488–5491; vol. 8, p. 7758.]

Houghton, J., dissenting.

Appeal from Court of Special Sessions of City of New York.

The John H. Woodbury Dermatological Institute was convicted of a violation of Medical Law, Laws 1907, p. 646, c. 344, § 15, making any person, not a registered physician, who shall advertise to practice medicine, guilty of a misdemeanor, and it appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Roswell S. Nichols, for appellant.

Robert S. Johnstone, Deputy Asst. Dist. Atty., for respondent.

LAUGHLIN, J.   The defendant is a domestic corporation.   It was duly incorporated on or about the 31st day of March, 1890, under and pursuant to the provisions of an act of the Legislature passed on the 17th day of February, 1848 (Laws 1848, p. 54, c. 40), entitled "An act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes," and acts amendatory thereof and supplemental thereto.   The evidence satisfactorily shows that the defendant advertised that it was practicing medicine, as set forth in the information upon which it was tried.

Section 15, c. 344, p. 646, Laws 1907, which became of force prior to the time the defendant advertised the practice of medicine, as set forth in the information, provides, among other things, as follows:

"Any person, not a registered physician, who shall advertise to practice medicine, shall be guilty of a misdemeanor."

The conviction was for a violation of this provision of the statute. The learned counsel for the appellant contends that the statute does not prohibit the practice of medicine by a corporation.   The learned

counsel for the people draws attention to section 5 of the statutory construction law (Laws 1892, p. 1487, c. 677), which provides that "the term 'person' includes a corporation and a joint-stock company," and insists that this is the rule of construction to be applied to the statute in question. Section 1 of the statutory construction law provides as follows:

"This chapter * * * is applicable to every statute unless its general object, or the context of the language construed, or other provision of law indicates that a different meaning or application is intended than that required to be given by this chapter."

I am of opinion that this statutory construction law is applicable, and governs the construction of the statute in question. The purpose and object of the statute was to limit the practice of medicine and advertising to practice medicine to those lawfully registered or otherwise authorized to practice medicine. Strictly speaking, of course, a corporation can neither qualify to practice medicine nor administer medical or surgical aid. If the Legislature enacted the prohibition against practicing medicine and advertising to practice medicine upon the theory that a corporation could not practice medicine, then there would be no reason for inferring that it intended to prohibit something which could not be done, for that would be quite unnecessary. As I view it, the only theory upon which this prohibition can be deemed to extend to corporations is that the Legislature recognized that, while corporations may not obtain diplomas and register as physicians or actually treat patients or perform surgical operations, they may, through agents and employés, as all corporations are obliged to perform their functions, practice medicine by providing accommodations for patients and facilities for their care and treatment, and physicians and surgeons to administer to them. This is and for many years has been done in hospitals, dispensaries, infirmaries, and sanitariums with which the Legislature is presumed to have been familiar. Were the corporation authorized to receive, and by the aid of physicians and surgeons to treat, patients, and by the aid of nurses and other employés to properly care for them, I am of opinion that they come within the exception contained in section 1 of the statutory construction law, and are neither prohibited from practicing medicine in that sense nor from advertising such practice. Although, therefore, in a technical sense, a corporation cannot practice medicine, yet, if it be authorized to provide suitable accommodations for the care and treatment of the sick and to receive patients, and to employ physicians and surgeons to treat them, this law should not be construed as prohibiting it from advertising that which it is thus authorized to do. This being so, I see no public good or advancement in the cause of relieving the community from the imposition of quackery that will flow from a judicial decision that a corporation thus authorized to receive and provide for the medical or surgical treatment of patients may not advertise that it prescribes medicines or performs surgical operations, for the reason that it is not and cannot be registered as a physician or surgeon, and it is physically impossible for it to so prescribe or perform operations because of its inanimate nature, but that it may law-

fully advertise just what it in fact does, and that is that it receives patients and employs physicians and surgeons to treat them; for everybody knows that that is the only way it could treat them. If such an institution employed others than duly registered physicians and surgeons to treat those coming to it .for medical or surgical aid, then, if it advertised that it was practicing medicine, it might be guilty of a violation of this statute, even though it be authorized to thus practice medicine, employing duly registered physicians and surgeons; and, of course, the individuals prescribing for the patients in treating them surgically would be subject to prosecution if not duly registered. Chapter 95, p. 93, Laws 1889, which authorized the incorporation of "hospitals, infirmaries, dispensaries and homes for indigent persons," provided in section 5 that the certificate of incorporation might declare and prescribe the qualification of members "in the matter of adherence or nonadherence to any particular school or theory of medical or surgical treatment, and what system of practice or medicine or treatment shall be used and applied in such hospital, infirmary or home," and section 4 thereof, so far as material, provided that the property of the corporation should be exempt from taxation "to the extent that, and so long as, the same shall be used exclusively for the care, reception, maintenance, medical and surgical advice, aid and treatment, * * * and provided that it shall and do actually render medical and surgical aid, advice and treatment to poor persons in need of such treatment without charge therefor." Section 8 provided, among other things, that:

"The by-laws may specify what classes and description of persons shall or may receive treatment, advice, care and maintenance from said hospital, infirmary, dispensary or home."

These statutory provisions have been superseded by the provisions of article 6 of the membership corporation law (Laws 1895, p. 354, c. 559), in which they are substantially re-enacted. It will be seen that by the provisions quoted from sections 4 and 8 of the act of 1889 it was expressly contemplated that the patients should be treated by the institution, which, of course, is the practical effect in such cases. The hospitals or other institutions owe a duty with respect to the care and medical treatment, even of free patients; and we may take judicial notice of the fact that they receive some patients for hire and incur a responsibility to exercise proper care in the selection of physicians, surgeons, nurses, and other attendants, as is shown by the cases which have come before the court for adjudication. I am of opinion, therefore, as already observed that these institutions which are authorized to receive patients for treatment and to provide medical and surgical treatment for them do not come within the prohibition of the act, and that they may lawfully advertise the business which they are thus duly authorized to do. It may be that sanitariums and similar institutions, although incorporated under the business law, are authorized to receive patients and employ physicians and surgeons to treat them; but that question is not presented for decision, and upon it I express no opinion. I limit my opinion to the proposition that any corporation lawfully authorized to receive and care for individuals requiring medical or surgi-

cal treatment and to provide proper treatment for them either gratui-
tously or for hire may advertise its business without subjecting itself
to liability for a violation of the statute in question, and that it is quite
immaterial whether it advertises that it prescribes for and treats the
patients, or that this is done by its employés. The defendant, however,
has not shown that it was duly authorized to receive patients or fur-
nish them medical or surgical aid or treatment. Its certificate of in-
corporation limits its business to "manufacturing chemical preparations
and printing, publishing and selling books and pamphlets relating to
the same and advertising the same." It therefore does not come with-
in the exception contained in section 1 of the statutory construction law,
and the statute prohibits it from advertising the practice of medicine.

It follows that the judgment should be affirmed.

PATTERSON, P. J., concurs.

INGRAHAM, J. The district attorney presented to the court of
Special Sessions an information charging that the defendant, a do-
mestic corporation, not lawfully authorized to practice medicine with-
in the state and so registered according to law, did cause and procure
to be printed and published in certain newspapers in the city of New
York an advertisement that it was practicing medicine within the said
city. Upon the trial before the Court of Special Sessions the defendant
was convicted and fined, and from that judgment the defendant ap-
peals.

The defendant was incorporated under an act (chapter 40, p. 54,
Laws 1848) which provides for the formation of corporations for min-
ing, manufacturing, and chemical purposes and the several acts of the
Legislature amendatory thereto. The object for which the said de-
fendant was incorporated was "the carrying on of the business of manu-
facturing chemical preparations and printing, publishing and selling
books and pamphlets relating to the same and advertising the same."
The capital stock of the company was $1,000, and this certificate was
filed March 23, 1890. Subsequently the defendant inserted in various
newspapers advertisements offering to give medical treatment for cer-
tain defects or deficiencies, and also published certain books and pam-
phlets with the same object. The only question presented on this ap-
peal is whether a corporation can be guilty of a crime under section 15
of the medical law (chapter 344, p. 646, Laws 1907). By the statutory
construction law (chapter 677, p. 1486, Laws 1892), which by section
1 is applicable to every statute, unless its general object or the context
of the language construed or other provision of law indicate that a
different meaning or application was intended from that required to be
given by the chapter, provides in section 5 that "the term person in-
cludes a corporation and a joint-stock association." This provision in
the statutory construction law was taken from subdivision 13 of section
718 of the Penal Code, and from section 955 of the Code of Criminal
Procedure, there applicable to the commission of crimes and to the
procedure in criminal prosecutions, and which sections of the Penal
Code and Code of Criminal Procedure were repealed by section 35 of
the statutory construction law as being covered by section 5 of that

act. The effect of the enactment of this provision in the statutory construction law with the simultaneous repeal of these sections in the Penal Code and Code of Criminal Procedure would seem to clearly indicate that it was the intention of the Legislature to make this provision apply to all cases in which a corporation had committed an act which by law was made a criminal offense if committed by a "person." After the enactment of the statutory construction law, the laws relating to the practice of medicine were revised by the enactment of the medical law (chapter 344, p. 636, Laws 1907). By subdivision 7 of section 1 of that act the practice of medicine is defined as follows:

"A person practices medicine within the meaning of this act, except as hereinafter stated, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease. pain. injury, deformity of physical condition, and who shall either offer or undertake by any means or method. to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition."

And section 2 provides that no person shall practice medicine unless registered and legally authorized prior to September 1, 1891, or unless licensed by the regents and registered under the provisions of certain acts specified, or unless licensed by the regents and registered as required by the act. The statute then provides for the appointment of a state board of medical examiners, for the examination of candidates for admission to practice, for the issuing of licenses to the successful applicants, and for the revocation of a license for certain specified offenses; and then by section 15 provides that:

"Any person who, not being then lawfully authorized to practice medicine within this state and so registered according to law, shall practice medicine within this state without lawful registration or in violation of any provision of this article; * * * or any person not a registered physician who shall advertise to practice medicine, shall be guilty of a misdemeanor."

The whole object of this act is clearly to restrict the practice of medicine to those therein authorized. Section 2 expressly provides that no person shall practice medicine unless registered or licensed as therein provided. It could not have been the intention of the Legislature to restrict an individual from practicing medicine unless he had complied with the very careful provisions of the act for testing his competency to so practice, and yet allow a corporation, through its agents, to practice without any examination or license whatever. Such a construction would be against the avowed and clearly expressed intention of the Legislature. It is also manifest that it was the intention to prohibit any one not legally authorized to practice medicine from advertising to practice. Under this act a corporation never could become legally authorized to practice medicine, and, reading into the act the definition contained in the statutory construction law, the statute would then provide:

"Any person, including a corporation and a joint-stock association, who, not being then legally authorized to practice medicine within this state and so registered according to law, shall practice medicine within this state without lawful registration or in violation of any provision of this article; * * * or any person, including a corporation and a joint-stock association not a registered physician who shall advertise to practice medicine, shall be guilty of a misdemeanor."

The defendant, a corporation, having advertised to practice medicine, was therefore acting in violation of this provision, and was properly convicted.

We are referred to several English cases which are claimed to be contrary to this construction of the statute, but it is quite unnecessary to refer to them more than to say that they arose under statutes which are essentially different from the one now under consideration, and present an entirely different question, and this view would seem to be incidentally approved by the Court of Appeals in Hannon v. Siegel-Cooper Company, 167 N. Y. 244, 60 N. E. 597, 52 L. R. A. 429. But it seems to me the question is entirely clear. A consideration of the medical law, the clearly avowed object of which was to prevent incompetent and irresponsible persons from practicing medicine, as well as the clearly expressed intention of the Legislature by the statutory construction law substituting in place of various provisions defining and creating crimes as well as civil rights and remedies the definition of "person," and substituting this definition for the definitions theretofore contained in the Penal Code and the Code of Criminal Procedure, seems to me to clearly demonstrate that the provisions of the medical law were intended to apply to all persons natural or artificial and to prohibit any person, whether a natural individual or a corporation or joint-stock association, from practicing or advertising to practice medicine unless expressly authorized by the act.

This conclusion necessarily results in the affirmance of the judgment appealed from; and it is therefore affirmed.

CLARKE, J., concurs.

HOUGHTON, J. (dissenting). The purpose of that part of the public health law relating to the practice of medicine is to regulate the qualifications of a physician and prescribe what attainments he shall possess before being permitted to practice. Manifestly the necessary attainments are such as only a natural person can acquire. No corporation can ever qualify itself to practice medicine, and hence I do not think the Legislature intended to include a corporation in any of the provisions of the law. There could have been no intent to prohibit a corporation from advertising to do what every one would know it could not do, and which could be no fraud, because no one could be deceived. The Legislature well knew that certain corporations throughout the state were engaged in the business of conducting sanitariums and hospitals quite necessary and beneficial to the community. If the construction contended for by the people is correct, each one of these violates the statute by advertising that it conducted an establishment for the treatment of diseases, and maintained a corps of physicians of the highest standing to treat its patients. Very probably the defendant is not engaged in such a legitimate business and that it is exceeding its corporate powers, but that does not make it guilty of the charge upon which it has been convicted. If it employed any unlicensed physicians and received the fruits of their services, quite another question would be presented, and possibly in such case it might be convicted of some crime, and, of course, the individuals so practicing would be

guilty. So far as appears, however, no unlicensed physicians are employed.

It seems to me the defendant corporation does not come within the statute, and that its conviction was improper.