(133 App. Div. 547.)

In re . SHAY.

(Supreme Court, Appellate Division, First Department.   July 13, 1909.)

1. ATTORNEY AND CLIENT (§ 14*)—OFFICE OF ATTORNEY—ADMISSION TO PRACTICE.

   Attorneys are admitted to practice by the state Supreme Court on taking the oath of office, and they thereby become public officers, whose duties are regulated by the Code of Civil Procedure.

   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 21; Dec. Dig. § 14.*]

2. ATTORNEY AND CLIENT (§ 133*)—COMPENSATION—CONTRACTS.

   The compensation of an attorney is governed by agreement, express or implied, with his client.

   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 317; Dec. Dig. § 133.*]

3. ATTORNEY AND CLIENT (§ 38*)—DISBARMENT—CONDUCT OF ATTORNEY.

   Code Civ. Proc. § 74, prohibiting an attorney from procuring retainers by offering or giving any valuable consideration, etc., prohibits an attorney from giving, or promising to give, a valuable consideration to any person as an inducement to place in his hands a demand to bring action thereon, except that attorneys may agree to divide between themselves the compensation for prosecuting or defending an action, and an attorney contracting to pay a person a part of the compensation that he may receive from causes of action procured by such person is guilty of misconduct justifying disbarment.

   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 51; Dec. Dig. § 38.*]

4. ATTORNEY AND CLIENT (§ 58*)—MISCONDUCT—PUNISHMENT.

   An attorney contracting to pay a person a part of the compensation that the attorney may receive in prosecuting negligence cases brought to him by such person, in violation of Code Civ. Proc. § 74, will be suspended from practice for one year, instead of disbarred, because of the fact that such practice is common among attorneys engaged in the prosecution of negligence cases.

   [Ed. Note.—For other cases, see. Attorney and Client, Cent. Dig. §§ 77, 78; Dec. Dig. § 58.*]

Proceeding by the District Attorney of the County of New York to disbar Joseph A. Shay, attorney and counselor at law.   Respondent suspended for one year.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Robert C. Taylor, Asst. Dist. Atty., for petitioner.
Louis Marshall, for respondent.

INGRAHAM, J. The respondent was admitted to practice in November, 1900, and has continued to practice in the city of New York since that time. The petition alleges that on the 6th day of December, 1907, the respondent entered into an agreement with one Peck, who was not an attorney at law, whereby he agreed to pay Peck a weekly salary varying from $15 to $20 a week, in consideration of Peck's doing such work as the respondent should assign to him, and more especially the work of investigator in negligence cases and preparing the same for trial; and, in addition to the weekly salary, the respondent agreed to pay Peck 10 per cent. of the net fees that the respondent should thereafter receive in all negligence cases which the said Peck should solicit and bring into the respondent's office. This sum was not paid as compensation for any services performed by Peck for the respondent, but as compensation for obtaining contracts by which the respondent was retained and employed as an attorney and counselor at law to bring actions on behalf of the persons with whom the contracts were made.

It was further alleged in the petition: That, during the time this contract was in force, one Tully was injured by an accident which occurred in the city of New York, and which resulted in Tully's losing one of his legs; that on or about the 25th day of June, 1908, the day of the accident, Peck went to see Tully and obtained from him a written agreement retaining the respondent as attorney for the said Tully to bring an action to recover damages for his injuries, promising in said agreement to pay to the respondent as and for his services as such attorney 50 per cent. of any amount that should be recovered in such action; that at the same time Peck took a statement from the said Tully of the facts in relation to the accident, which he gave to the respondent with the retainer, and Peck did no other work in the Tully case, with the exception of an interview with one person, who stated that he had not seen the accident; that subsequently the respondent brought an action on behalf of Tully against the receiver of the Third Avenue Railroad Company to recover the sum of $40,000 as damages for the said injury, and on the 4th day of February, 1909, the said action was settled by the payment on behalf of the defendant to the respondent, as attorney for the plaintiff, of the sum of $1,400, of which the respondent retained $700 and paid to Peck $70, 10 per cent. thereof, under the aforesaid agreement; that subsequently and on the 25th of June, 1908, one Boyer was injured in an accident in the city of New York, and Peck obtained from said Boyer a like agreement; that thereafter the respondent brought an action against the receiver of the New York City Railroad Company to recover the sum of $10,-000 for the said injuries, and subsequently and in February, 1909, the said action was settled by the payment by the defendant to the respondent, as attorney for the plaintiff, of the sum of $500 as his share of the settlement under his agreement, and thereafter paid to Peck the sum of $25, under the agreement between the respondent and Peck.

It is further alleged: That, during the period that this contract be-

tween the respondent and Peck was in force, Peck placed in the hands of the respondent for the purpose of bringing actions thereon at least 20 claims of other persons who had received personal injuries, and in which the respondent in each case paid to Peck 10 per cent. of the fees that the respondent received; that Peck received from the respondent during that period upwards of $1,000 as commissions upon the cases that Peck brought to the respondent and in which the respondent commenced legal proceedings; that the respondent also made a contract with one Mercer, who is not an attorney and counselor at law, whereby the respondent agreed to pay Mercer $25 a week in consideration of Mercer's doing such work for the respondent as the respondent should assign to him, with the further understanding that Mercer was to receive from the respondent, in addition to such weekly payment, 15 per cent. of the net fees that the respondent should thereafter receive in all negligence cases which Mercer should solicit and bring to the respondent's office. This 15 per cent. was to be received by Mercer regardless of the amount of work done by him in investigating such negligence cases or in preparing the same for trial, and was not paid as compensation for such work, but as compensation for bringing such cases to the respondent.

It is also alleged: That Mercer did thereafter solicit and place in the hands of the respondent at least 12 claims to recover damages sustained by various persons, whereupon the respondent thereafter brought actions against various persons, firms, and corporations and obtained recoveries or settlements thereon, and, pursuant to the understanding between the respondent and Mercer, the respondent paid to Mercer from time to time amounts of money aggregating $2,000; that on or about the 15th day of November, 1908, there were a number of other cases pending in the respondent's office in which the respondent brought actions upon contracts procured by Mercer, and under which the respondent was to receive a contingent fee for bringing and prosecuting the actions; that, Mercer being in need of money, the respondent offered him the sum of $500 for Mercer's interest in such cases, which Mercer accepted and signed releases; that the respondent had a similar understanding with other clerks in his employ who had received salaries and, in addition thereto, a percentage of the net fees received by the respondent in claims solicited by said clerks and placed in the hands of the respondent for the purpose of bringing actions thereon; that the respondent accepted these retainers and brought actions for persons whose employment had been solicited by said clerks and, pursuant to these understandings, paid to the several clerks various sums of money as commissions for procuring the retainer of the respondent for the purpose of bringing such actions; that the respondent supplied Peck and Mercer and the other clerks with printed pads of contracts of retainer retaining the respondent for a contingent fee, the amount of the contingent fee being one-half of the recovery in each case. These pads were blank contracts, a copy of which was annexed to the petition, and provided that the signer of the agreement employed "Joseph A. Shay, counselor at law, to institute, prosecute and compromise legal proceedings in my behalf against the proper defendant or respondent, to recover damages sus-

tained by" the signer of the contract. For such services the respondent was to receive one-half of any settlement, verdict, or recovery had in such action, and in addition thereto he was to receive all costs recovered.

The respondent appeared in this proceeding and filed a verified answer, in which he made no denial of and raised no issue as to any of the allegations of the petition, and on the argument he accepted the facts alleged in the petition as true, and asked that the proceeding be determined on the petition and answer.

There were in these cases direct agreements by which an attorney at law agreed to pay to a person procuring contracts by which he was retained to prosecute actions at law a percentage of his fees for prosecuting the actions or proceedings after he was retained. It is expressly alleged that this percentage was not paid for services rendered to the respondent, but was paid solely for the procurement of the contracts of retainer by the persons having claims to be prosecuted by legal proceedings. The fact that persons with whom the respondent made these agreements were paid by the respondent for other services rendered by them seems to me to have no relation as to the effect of these agreements. The persons with whom he made these contracts were not attorneys at law, and no part of the respondent's fee that he paid to such persons had any relation to or connection with the performance by such persons of services which they rendered to the respondent, except in procuring the contracts of retainer. They were purely contracts by which the respondent paid persons, not attorneys at law, for obtaining contracts by which the respondent was to conduct legal proceedings and to receive a contingent fee therefor. Attorneys at law are admitted to practice by the Supreme Court of this state upon taking the oath of office, and they thereby become public officers. The duties of an attorney are regulated by the Code of Civil Procedure, and his compensation is governed by the agreement, express or implied, with his client. Certain rules are prescribed to regulate his conduct. Section 74 of the Code of Civil Procedure provides that:

"An attorney or counsellor shall not by himself, or by or in the name of another person, either before or after action brought, promise or give, or procure to be promised or given, a valuable consideration to any person, as an inducement to placing, or in consideration of having placed, in his hands, or in the hands of another person, a demand of any kind, for the purpose of bringing an action thereon."

This prohibition is general and prohibits an attorney from giving, or promising to give, a valuable consideration to any person as an inducement to placing in his hands a demand of any kind for the purpose of bringing an action thereon. There is but one exception to this absolute prohibition, and that is the proviso at the end of the section that it is not to apply to an agreement between attorneys and counselors, or either, to divide between themselves the compensation to be received. The exception emphasizes the prohibition. All agreements by which an attorney at law promises to pay to any person a percentage of any portion of the compensation that he is to receive from a client are prohibited, except where an attorney at law, hav-

ing a claim to prosecute, wishes to obtain professional assistance from another attorney in the prosecution or defense of the claim, and it is allowed that compensation received for such prosecution or defense may be divided between the attorneys; but in all other cases the statute absolutely forbids any agreement by an attorney at law by which he is to divide the compensation that he is to receive from his client with any person as a consideration of his retainer to prosecute or defend the action.

In October, 1905, there was presented to the Appellate Division of the Fourth Department an application to disbar an attorney and counselor at law upon the ground that he had employed a person to solicit the owners of lands abutting upon highways in which telegraph and telephone poles had been erected to retain such attorney to prosecute, for a contingent fee of a percentage of the recovery, actions to enforce their claims against telephone and telegraph companies maintaining such poles, and agreed to pay such solicitor for each claim so secured one-half the proceeds realized by the attorney therefrom. It was held that such an employment was a violation of section 74 of the Code of Civil Procedure, and such contract on the part of an attorney was and is illegal and required his disbarment. Matter of Clark, 108 App. Div. 150, 95 N. Y. Supp. 388. Upon an appeal to the Court of Appeals (184 N. Y. 222, 77 N. E. 1), in affirming the order of the Appellate Division, the court said:

"The statute forbids the promise or gift of a valuable consideration to any person as an inducement for placing a claim for prosecution in the hands of an attorney. The effect of the decision below is to hold that section 74 of the Code of Civil Procedure not only prohibits a lawyer from offering or giving any valuable consideration to a desired client for the purpose of obtaining his claim to bring suit upon, but also forbids the lawyer from paying or agreeing to pay any layman out of the prospective profits of the case for services in inducing a desired client to place his claim in the attorney's hands for enforcement. In behalf of the appellant it is contended that this construction is incorrect, and that the section seeks only to prohibit the offer or gift from an attorney to the person having the claim—that is to say, to the desired client—as an inducement to the retainer."

After citing two cases in the Appellate Division of the Supreme Court and one in the Court of Appeals, the court said:

"In these three decisions, then, two in the Supreme Court and one in the Court of Appeals, we have a distinct recognition of the applicability of section 74 of the Code of Civil Procedure to a case in which the attorney pays money, not to a claimant, to procure a retainer from him, but to a lay agent to exert his influence upon the claimant to induce the latter to employ the attorney."

The opinion then proceeds:

"It is said that the law permits attorneys to solicit business, and hence that there is no valid reason why they should not be permitted to pay agents to solicit business for them; but for nearly a century the law has prohibited them from obtaining retainers by offering or giving any valuable inducement whatever to the desired clients themselves, for the plain reason that such conduct tends to stir up litigation which might not otherwise arise, and because needless litigation has always been deemed a public evil. It is equally manifest that the employment of paid agents has the same tendency. Where, as in the case at bar, the remuneration of the agent depends upon the number of retainers he procures, the strongest motive exists on his part to incite the

assertion and prosecution of claims that might otherwise never be heard of. Nor is there anything in the suggestion that the employment of such paid emissaries is essential to the protection of the poor, who else might not become aware of their right to prosecute remedies in the courts for wrongs which they may have suffered. The permission which the law now gives to attorneys to serve clients for a contingent fee is sufficiently well known throughout the community to enable any one, however limited his means, to secure adequate professional service in the enforcement of any meritorious claim in the courts. It is not necessary for the protection of the poor to sanction the practice which, as applied to negligence cases under the name of 'ambulance chasing,' has brought deserved discredit upon those engaged in it; and in any event, if the views which have been expressed are correct, the law denounces the practice as criminal."

This decision of the Court of Appeals was announced in March, 1906, and when these contracts were made by the respondent the law of this state was settled by a decision of the highest court of the state. An application was made to the Appellate Division of the Fourth Department to reinstate the attorney who has been disbarred for the practice to which attention has been called. The court again considered the circumstances of Clark's disbarment, and unanimously decided that it would be improper to restore him to the profession, although the petitioner had presented to the court the letters of many men, laymen as well as many lawyers, urging his reinstatement.

As before stated, the respondent comes into court admitting the allegations of the petition; admitting a course of practice and the commission of acts which the highest court in the state has characterized as criminal. It is said, however, by the respondent, that the fact that he had employed these solicitors to do other work for him, for which he had paid them a salary, in some way affected this express prohibition of the statute. But there is no such limitation in the statute; the single exception being an agreement between two attorneys to divide the compensation to be received. The statute does not except clerks or other employés of an attorney; the limitation applying strictly to agreements with attorneys. There can be no question but that this exception would apply to an attorney employed in the office of another attorney; but what the statute, as construed by the Court of Appeals, expressly prohibits, is an agreement by which an attorney pays or promises to pay money to a lay agent to exert his influence upon the claimant to induce the latter to employ the attorney. Matter of Clark, 184 N. Y. 231, 77 N. E. 1. Counsel for the respondent, in his brief, seems to think that this conclusion would prevent an attorney from engaging a clerk not a lawyer and giving him an interest in the business, a contract which he claims was held to be legal in Brush v. Lee, 36 N. Y. 49; but certainly the distinction must be apparent between a case in which an attorney simply employs a clerk to render services for him in his office, and that of an attorney who makes an independent contract with a clerk so employed to give such clerk a percentage of the attorney's fees received from clients from whom the clerk, outside of his regular office duties for which he received compensation, obtained contracts of retainer to commence and prosecute actions. It is clear that the arrangement under which these retainers were procured was within the prohibition contained in section 74 of the Code and has been in express and explicit terms condemned by the courts of this state, in-

cluding the Court of Appeals. It was this practice that the Court of Appeals characterized "as applied to negligence cases under the name of 'ambulance chasing'" as having brought "deserved discredit upon those engaged in it," and which is expressly denounced as criminal.

I cannot therefore escape the conviction that upon this showing the defendant had been engaged in a criminal practice and has been guilty of a misdemeanor. We have then to determine the punishment which should be inflicted. Notwithstanding the ingenious defense made for the respondent by his learned counsel, I cannot for one moment believe that the respondent considered this practice as one which was authorized by law, or which was not disgraceful for a member of the legal profession. It is a practice made a misdemeanor by the Code of Civil Procedure and by the Penal Code. It is a practice that has been commented upon and criticised at meetings of lawyers and in judicial decisions as well as by the general public; and now, when it is for the first time in this department brought directly before the court, I believe it to be our duty to speak in no uncertain terms in condemning it as a violation of the criminal law in this state, and also a practice which is unprofessional and destructive of the honor of the profession and of the confidence of the community in the integrity and honor of its members.

It has been urged, in extenuation of this offense, that it is a practice which is common among members of the profession who are engaged in the prosecution of negligence cases, and that it is unfair to visit upon the offender who has first been brought before the court upon a charge of this character the extreme punishment of disbarment; and a majority of the court are of the opinion that this fact should be considered, and that, instead of disbarment, the respondent should be suspended from practice for one year.

Such suspension will therefore be the punishment inflicted in this case. We wish it to be distinctly understood, however, that, after this expression of the views of the court upon the nature of the offense, the considerations that have influenced a majority of the court in deciding upon this punishment, rather than disbarment, will not be considered upon any future conviction of practice of this kind. All concur.