BUXTON v. LIETZ.

(Municipal Court of City of New York, Borough of Manhattan, Sixth District. July, 1912.)

1. ATTORNEY AND CLIENT (§ 4*)—NATURE OF OFFICE.

The privilege of practicing law is not open to all, but is a special personal franchise limited to persons of good moral character, with special qualifications ascertained and certified after study and examination.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 4–9; Dec. Dig. § 4.*]

2. ATTORNEY AND CLIENT (§ 130*)—PRIVILEGES AND DISABILITIES—MERCANTILE AGENCY.

Under Penal Law (Consol. Laws 1909, c. 40) § 270, providing that any person not duly licensed to practice law who holds himself out as an attorney and counselor at law, or who attempts to practice law, is guilty of a misdemeanor, a contract for services or commissions made with an individual engaged in the business of a mercantile agency for collection of accounts on behalf of clients and instituting suits for that purpose, when necessary is illegal and unenforceable.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 292, 293, 295, 296, 306, 307, 311; Dec. Dig. § 130.*]

Action by Ben. A. Buxton against Charles L. Lietz. Judgment in favor of the defendant dismissing the complaint.

Jacob Miller, for plaintiff.
George W. Hart, for defendant.

SNITKIN, J. [1, 2] This action is brought to recover the sum of $192.62 for services alleged to have been rendered by the plaintiff to the defendant under and pursuant to a written contract dated the 10th day of March, 1911, which contract reads as follows:

"That the plaintiff has this day received of Charles L. Lietz of N. Y. City, N. Y., client, $240, of the above amount client [referring to defendant], will pay one-third in note for thirty days, balance will be paid from collections as working costs and disbursements of the claim department of the agency

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for a period of one year from date on all claims now listed and filed with the agency, together with all accruing delinquent claims in accordance with the conditions contained herein."

The agreement aforesaid then further specifies the nature of the services to be rendered and the conditions, as follows:

### "Preliminary Service.

"In consideration of the amount paid aforesaid the agency agrees to apply on all claims, both present and accruing, a preliminary service, consisting of the usual letters prepared by the agency and delivered to the client for mailing, and all sums received from the use of such preliminary service shall be free of all commission charges. The use of said preliminary service is optional with the client.

### "Secondary Service.

"On all claims not settled by preliminary service the agency agrees to apply its secondary service by using the system and methods of the agency direct from its own office, and a commission charge will be made on all sums received by the client or the agency on such secondary service on the following basis:

"Current claims not over twelve months past due, 10 per cent.; claims litigated, very difficult or from one to six years old, 25 per cent.; outlawed, bankrupt, traced or very small claims or installment payments, 50 per cent.

"It is further agreed that suit will not be commenced on any claim without express authority from the client, in which event the client agrees to advance the necessary court costs of the same.

"It is also understood and agreed that no claim on which secondary service has been applied shall be withdrawn from the agency without its consent unless the client shall pay the agency its commission and disbursements on the same.

"It is agreed that upon the expiration of this contract the agency may continue its efforts on any claims in process of settlement or under development until same are either settled or are found by the agency to be uncollectible.

"Agents positively have no authority to alter the printed conditions of this or any other printed form, nor to make any other or separate agreements of any kind.

"By the acceptance of this contract the client agrees to all the conditions thereof. The agency agrees to mail client one set of monthly claim blanks, also one statement stamp and tabulation sheet, which client will use.

"Meacham-Buxton Mercantile Agency,
"By William S. Quinn,
"Special Agent, Contract Dep't.
"Chas. L. Lietz, Client.

"Date March 10, 1911."

Simultaneously with the signing of the foregoing agreement the following supplemental agreement was signed:

"Meacham-Buxton Mercantile Agency,
"34 West 33d St., New York, U. S. A.

### "Recovery Agreement.

"Supplementing and being part of a contract signed this day between this agency and Chas. L. Lietz, client.

"The agency states that there will be recovered in payments and settlements during one year at least six hundred 00-100 dollars ($600 00-100) as a minimum in results of its service, upon condition of the entry of the entire amount of client's old, present and accruing delinquent claims; client is to enter to the agency each thirty or sixty days subsequent to this day, without additional working cost, such claims as are not paid through its own office facilities. Should there exist any deficiency in the above amount of minimum recovery the agency agrees to carry to completion at its own expense all unfinished partially paid accounts and promised settlements and to accept

and work all new claims for an additional year without extra working cost to client and complete with through service and results this agreement. Agents have no authority to change the printed conditions of or make the recovery agreement for more than 2½ times the amount of working cost paid by client.

"Meacham-Buxton Mercantile Agency,

"By William S. Quinn,

"Special Agent, Contract Department.

"Date March 10, 1911."

It cannot be seriously disputed from the records in this case that the plaintiff is engaged in a business which consists of collecting outstanding accounts for "clients," and, when necessary to institute litigation for that purpose. The question to be determined by the court is, Can the plaintiff recover on a contract like the one at bar, and does that contract contravene the statute? Now, it is well known in legal jurisprudence that the practice of the law is regulated by statute. It is equally well known that by chapter 88, Laws of 1909 ( [Consol Laws 1909, c. 40] forming section 270 of the Penal Law), any person not duly licensed to practice law, who holds himself out as an attorney and counselor at law, or who attempts to practice such profession, is guilty of a misdemeanor. The privilege of practicing law is a special franchise conferred on those who by earnest and conscientious study and possessing the required qualifications are fit to take the constitutional oath of this truly great office.

Thus, In the Matter of Co-operative Co., 198 N. Y. 479–483, 92 N. E. 15, 16 [32 L. R. A. (N. S.) 55, 139 Am. St. Rep. 839, 19 Ann. Cas. 879], Mr. Justice Vann, writing the opinion of the Court of Appeals, said:

"The practice of law is not a business open to all, but a personal right, limited to a few persons of good moral character, with special qualifications ascertained and certified after a long course of study, both general and professional, and a thorough examination by a state board appointed for the purpose. The right to practice law is in the nature of a franchise from the state, conferred only for merit. It cannot be assigned or inherited, but must be earned by hard study and good conduct. It is attested by a certificate of the Supreme Court, and is protected by registration. No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal. It is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts. As these conditions cannot be performed by a corporation, it follows that the practice of law is not a lawful business for a corporation to engage in. As it cannot practice law directly, it cannot indirectly by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate. Quando aliquid prohibetur ex directo, prohibetur et per obliquium. Co. Lit. 223."

Counsel for the plaintiff, however, contends that the plaintiff is not to be likened to a corporation engaged in the practice of the law, and, again, that the prohibitions apply to corporations and not to individuals engaged in the business of a mercantile agency for collection on behalf of clients. This contention, however, is not sound, for the reason that the plaintiff is not an attorney and counselor at law, and, since he cannot practice directly, he is prohibited from practicing indirectly

by employing an attorney and counselor at law to institute suits or actions on behalf of his "clients" when necessary. In People v. John H. Woodbury Institute, 124 App. Div. 877, 109 N. Y. Supp. 578, it was held that a corporation could not practice medicine, although it employed competent physicians. Again it was held in Hannon v. Siegel Cooper Co., 167 N. Y. 244, 60 N. E. 597, 52 L. R. A. 429, that a corporation could not practice dentistry simply by employing a competent dentist. Thus in Re Kaffenburgh, 115 App. Div. 346, 101 N. Y. Supp. 507, it is said: ·

"The right to prosecute or defend an action or special proceeding is a personal right vested in the officer who has been duly appointed to take the constitutional oath of office."

The privilege granted by the statute to individuals to practice law is coupled with penalties and burdens as set forth in chapter 35 of the Laws of 1909 [Consol. Laws, c. 30], formerly constituting sections 56 to 81, Code Civ. Proc. So that it is fallacious to argue that the law casts a greater burden on the individual admitted to practice than on those who are lawfully not.

An attorney who would accept a retainer from the plaintiff to institute suit on behalf of his client would not only be liable under section 479 of the Judiciary Law (Consol. Laws 1909, c. 30), but under section 277 of the Penal Law he would be guilty of a misdemeanor, and the attorney would come within the decision of the Appellate Division in Re Shay, 133 App. Div. 547, 118 N. Y. Supp. 146, warranting disbarment.

An examination of the contract, the supplemental contract and the record leads me to the conclusion that it is most convincing that the contracts in question violate the law and come within the condemnation of the law as pointed out in Re Co-operative Co., supra, when Judge Vann said as follows:

"The bar, which is an institution of the highest usefulness and standing, would be degraded if even its humblest member became subject to the orders of money-making corporations engaged, not in conducting litigation for itself, but in the business of conducting litigation for others. The degradation of the bar is an injury to the state. The corporation can neither practice law nor hire lawyers to carry on the business of practicing law for it any more than it can practice medicine or dentistry by hiring doctors or dentists to act for it."

If then in reason and logic, for, after all, what is law but the perfection of reason, corporations cannot practice law, no good reason exists why an individual under an assumed name should be permitted to enter into the practice of the law and turn a noble profession into a business of the mercenary kind.

In view of what is said, and without touching upon the plaintiff's failure to establish due performance of his contract as therein provided, this court is of the opinion that the plaintiff cannot recover on the contract as a matter of law because of its illegality, and therefore renders judgment in favor of the defendant and against the plaintiff dismissing the complaint, with costs.