Municipal Court of Columbus.

UNITED MERCANTILE AGENCY V. ROBERT S. LYBARGER.

Decided December 10, 1930.

*Garek & Sillman,* for plaintiff.
*Hamilton & Kreamer,* for defendant.

KIME, J.

## FACTS.

This case comes to this court upon the petition of the plaintiff which sets out as follows:

"Plaintiff says that the defendant is justly indebted to the plaintiff in the sum of $31.95 which it claims on an account for necessaries, to-wit, commission on Lybarger Realty vs F. M. Ray, a copy of which is attached hereto with all credits thereon, marked Exhibit "A" and made a part hereof."

Then is the prayer for judgment signed by Garek & Sillman, attorneys for plaintiff.

The verification of the petition is by Earl J. Stewart who says that he is the duly authorized agent of the plaintiff, a corporation, and it is then sworn to by said agent, and attached to said petition as Exhibit "A," marked "Commission on Lybarger Realty vs F. M. Ray, $30.15, and interest $1.80, or a total of $31.95."

To this petition there is filed an answer by the defendant which in substance is a general denial and filed by his attorney, Harry C. Godown, thus making up the issues of said action.

The facts that developed from the testimony shows that the United Mercantile Agency is an Ohio Corporation properly organized and that its purpose is, as taken from its Article of Incorporation, as follows:

"Third. Said corporation is formed for the purpose of compiling, *collecting*, publishing and selling commercial credit rating and other directories, *collecting accounts*, furnishing reports and the performance of such other business as usually pertains to the publishing of reference and other directories, *making collections* and furnishing financial reports, etc. (Italics ours.)

The evidence further shows that the account in question was one which the defendant took in the amount of $80 or $90 to the United Mercantile Agency for collection, of which amount $19 was collected and the contract with said United Mercantile Agency was that if suit was not necessary 25% should be deducted from collections made or if suit was instituted, then 50% of the amount collected was deductible and payable to the United Mercantile Agency and this action is brought for 50% as suit was filed and judgment taken in favor of Lybarger by the United Mercantile Agency through its counsel above named.

The defendant in this action, Lybarger, withdrew his account from the collection agency for which commission they have sued, and there are now two questions involved in this case.

First. One whether or not Mr. Lybarger had a right to withdraw his account, or

Second. Had the United Mercantile Agency, the plaintiff in this action, a right to collect for their services.

Of the two questions the court believes from the issues made up and evidence adduced that the latter question is paramount.

Several Exhibits were used by the defense and among them a letter from the Lybarger Realty Company, known as Exhibit "B" which is as follows:

"August 12, 1929.

Stewart Brothers Collection Agency,
    8 East Long Street,
        Columbus, Ohio.
Gentlemen:
    Quite some time ago the writer turned over to you for collection a rent account against F. M. Ray in the amount of $90; in April you send me a small check and since that time I have not heard anything from you.
    I have called your office and asked for a report on this account but I never could get any information. Kindly look this account up and write me a report as to why you are not making any collections and oblige.

Yours truly,
Lybarger Realty Company,
Per R. B. Lybarger."

    The above Exhibit shows that more than four months passed from the time prior that the Lybarger Realty Company had heard from the United Mercantile Agency, or as known in Exhibit "B" as Stewart Brothers Collection Agency.

    The evidence further shows that the Lybarger Realty Company then sold his claim, which was then in the plaintiff's hands, to the Ohio Bureau of Credits, which is evidenced by Exhibit "A." Exhibit "A" is as follows:

"April 17, 1930.

United Mercantile Agency,
    Atlas Building,
        8 E. Long St.,
            City.
Gentlemen:
            Attention: Mr. F. L. Stewart.
    This is to advise that we have purchased from the creditor: Jerome N. Kline, Dr. Edw. W. Helfert, Lybarger Realty Co. (Coal) versus Fred N. Ray.
    These accounts were all purchased by us and creditors have agreed they will not in any way interfere therewith inasmuch as they are our accounts. We do not know whether the creditors will notify you; however, this can be verified by getting in touch with the several creditors. We trust that you will close your files with these accounts.

Yours truly,
CAS/MLS"                     Ohio Bureau of Credits, Inc.

The above Exhibit shows that the plaintiff in this case had notice of this, which is evidenced by the letter that they wrote, known as Exhibit "C" to the defendant in this case, and wherein Lybarger, the defendant in this case wrote on the bottom of Exhibit "C" informing them that he had nothing to do with this case. Said exhibit "C" is as follows:

April 18, 1930.

Mr. R. B. Lybarger,
1272 N. High St.,
Columbus, Ohio.
Dear Sir:
In Re: Fred M. Ray Account
We are just in receipt of a letter from The Ohio Bureau of Creditors stating they had purchased your account against the above debtor and we must ask that you get in communication with the writer so that we can have this case settled and dismissed from our files.

We trust that this will receive your prompt and careful attention.

Yours truly,
The United Mercantile Agency.

April 19, 1930.

Dear Sirs:
I send the Fred M. Ray account to the Ohio Bureau of Credits, Inc. and have nothing more to do with the account.

Yours truly,
Lybarger Realty,
Per R. B. Lybarger."

The evidence would cause the court to believe from Exhibits B and C that from April 1929 to April 1930 that the plaintiff in this action did nothing for the defendant in this action.

There is no question but what the United Mercantile Agency is an Ohio Corporation and under the Sections of General Code of the State of Ohio cannot practice law as it cannot be incorporated for a professional purpose and it is the defendant's contention that the plaintiff in this action is practicing law indirectly through the use of the attorneys of record for the plaintiff, and that the defendant further contends that what cannot be done directly cannot be done indirectly, that is by a subterfuge

and that the United Mercantile Agency in their charter where they are permitted to collect accounts on a commission basis and supply legal services, are practicing law.

It is further evident that in this case as well as a great many other cases that come into this court, that the plaintiff and plaintiff's Attorneys, on a great many occasions have never met, neither do they know until trial time the attorney that represents the plaintiff herein, and have no contractual relation between the attorney that represents them, having a contract directly with the plainiff in this action for this plaintiff to furnish them legal services.

The paramount question involved is, by virtue of this charter can the plaintiff herein practice law or can they do so indirectly through counsel whom they employ to practice law for them in the collection of accounts?

### OPINION.

Many cases have discussed this second question herein referred to and raises the question as to the *ultra vires* act of a corporation in practicing law and we wish to discuss a few of these cases.

In 6 App. cases, 87, page 92, the court of Civil Appeals, Nashville, Tennessee, we quote:

"The Court of Civil Appeals at Nashville, Tennessee had before it an action involving the issue of what constitutes practice of law in certain instances from which, by reason of the clear and extended statement of facts and definitions, the latter adopted in part from cited New York decisions, we here quote at length as follows:

"This action originated before a Justice of the Peace of Davidson county and was brought by the Grocers and Merchants Bureau of Nashville against the defendant in error to collect the sum of $10,00 growing out of a certain written contract filed as Exhibit "A" to the agreed statement of facts entered into between the parties, and upon which the case was tried in the court below, and which is made a part of the record upon this appeal. Said written contract was entered into on June 25, 1914, between the plaintiff in error and the defendant in error, Dr. W. E. Cray, who is a colored physician residing in the city of Nashville, Tennessee."

The defendant in error defended the suit upon the

ground that said contract was contrary to the public policy of the state, and was, therefore, illegal and void.

A trial of the case in the court below   *   *   *

The plaintiff in error is a collection agency incorporated under Chapter 58 of the Acts of 1901, providing for the organization of corporations for the purpose of conducting commercial, mercantile and protective agencies for the collection of debts. And for the purposes usual and appropriate to the business of such agencies.

The contract solicited by the plaintiff in error and entered into with the defendant in error on June 25, 1914 provided that in consideration of $10.00 to be paid monthly thereafter at the rate of eighty cents per month by the defendant in error, the plaintiff in error would furnish the following improved and strictly up to date service:

1. Rating book.
2. Supplements.
3. Standing of newcomers.
4. Special reports in Nashville.
5. Special reports in Tennessee.
6. List of bankrupts.
7. Free notary work.
8. Free legal advice regarding commercial matters.
9. To keep office open every Saturday evening until 6 o'clock.

It appears from the agreed statement of facts that said $10 was never paid, and was due under the terms of said written contract at the time the present action was brought.

It was the insistence of the defendant below that plaintiff in error was engaged in the practice of law and contracted, among other things, to perform the services of an attorney and counsellor at law for the defendant; that such a contract is illegal in Tennessee, except when made by a duly licensed attorney; and that the contract being illegal in part and the consideration being entire, the whole contract was vitiated. It was further insisted that the contract was also void upon the 'fround that it was solicited by the plaintiff in error.

The agreed statement of facts shows that plaintiff in

error employs a reputable and competent member of the Nashville Bar to give to its clients the legal advice which it contracts to furnish its subscribers or patrons, and it is insisted by counsel for plaintiff in error that, in pursuing this course, it was not in any sense holding itself out as an attorney or counsellor at law, nor is it engaged in the practice of law, but only hires a lawyer to give its clients legal advice, which, it is insisted, is in no way contrary to public policy. It is conceded by counsel for plaintiff in error that a corporation is not eligible to practice law in this state.

We think this is undoubtedly true, as our statutes upon the subject only apply to natural persons who must be twenty-one years of age, and of good moral character, and shall stand the examination prescribed by the State Board of Law Examiners, and shall have been duly licensed as required by Chapter 247 of the Acts of 1903, and Shannon's Code, Sec. 5772.

The question presented upon the agreed statement of facts is, whether the services undertaken to be performed by the plaintiff in error under the eighth item of said contract constitutes an undertaking to practice law within the meaning of our statutes, and within the legal significance of that term.

In the matter of the Co-operative Law Co., 198 N. Y., 479, 19 Am. & Eng. Ann. Cas., 879, a corporation was chartered "to furnish to its subscribers legal advice and service; to operate in connection with the above a department of law and collections for the use and benefit of the subscribers of the company only."

The Bar Association of the city of New York intervened to have its charter vacated, and the Court of Appeals, in vacating the charter, said:

"The practice of law is not a business open to all, but a personal right, limited to a few persons of good moral character, with special qualifications ascertained and certified after a long course of study, both general and professional, and a thorough examination by a state board appointed for that purpose. The right to practice law is in the nature of a franchise from the state conferred only for merit. It cannot be assigned or inherited, but must

be earned by hard study and good conduct. It is attested by a certificate of the Supreme Court and is protected by registration. No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal. It is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts. As these conditions cannot be performed by a corporation, it follows that the practice of law is not a lawful business for a corporation to engage in. As it cannot practice law directly, it cannot indirectly by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate. *Quande aliquid prohibetur ex direct, prohibetur et per obliquim.* Co. Litt., **223.**

"The relation of attorney and client is that of master and servant in a limited and dignified sense, and it involves the highest trust and confidence. It cannot be delegated without consent and it cannot exist between an attorney employed by a corporation to practice law for it, and a client of the corporation, for he would be subject to the directions of the corporation and not to the directions of the client. There would be neither contract nor privity between him and the client, and he would not owe even the duty of counsel to the actual litigant. The corporation would control the litigation, the money earned would belong to the corporation, and the attorney would be responsible to the corporation only. His master would not be the client but the corporation, conducted it may be wholly by laymen organized simply to make money and not to aid in the administration of justice, which is the highest function of an attorney and counsellor at law. The corporation might not have a lawyer among its stockholders, directors or officers. Its members might be without character, learning or standing. There would be no remedy by attachment or disbarment to protect the public from imposition or fraud, no stimulus to good conduct from the traditions of an ancient and honorable profession, and no guide except the sordid purpose to earn money for stockholders. The bar, which is an institution of the highest usefulness and standing, would be degraded if even its humblest member became subject to the orders of a moneymaking corporation engaged not in conducting litigation for itself, but in the business of conducting litigation for others. The degradation of the bar is an injury to the state.

"A corporation can neither practice law nor hire lawyers to carry on the business of practicing law for it, any more than it can practice medicine or dentistry by hiring doctors or dentists to act for it."

We have quoted from the opinion in the above case at length, because the case is directly in point, and the opinion sets forth some most wholesome reasons why a corporation cannot practice law either directly or indirectly, all of which this court heartily approves.

In *State Electro Medical Institute* v. *State,* 74 Neb., 4012 Am. & Eng. Ann. Cas., 673, it was held, under a statute of the state of Nebraska requiring a license for the practice of medicine, that a corporation is not such a person as can obtain a statutory license to practice medicine in said state.

In *Hannon* v. *Siegal-Cooper Co.,* 167 N. Y., 244, 52 L. R. A., 429, it was held that a corporation could not engage in and advertise that it was practicing dentistry.

*In re Duncan,* reported in 83 S. C., 186, 18 Am. & Eng. Ann. Cas., 657, it was held that any advice given to clients, or action taken for them, in matters connected with the law is practicing law. In that case the court said:

"It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all actions taken for them in matters connected with the law. An Attorney at law is one who engages in any of these branches of the practice of law. The following is the concise definition given by the Supreme Court of the United States: 'Persons acting professionally in legal formalities, negotiations, or proceedings by the warrant or authority of their clients may be regarded as attorneys at law within the meaning of that designation as employed in this country.' "

Under these definitions there can be no doubt that the giving of legal advice "regarding commercial matters" is

engaging in the practice of law. This being true, we are of the opinion that the contract solicited and entered into by the plaintiff in error with defendant in error, Dr. Gray, is illegal and non-enforceable, because against public policy.

The eighth item of said contract obligated the plaintiff in error to give to the defendant in error legal advice regarding all commercial matters, which was a portion of the service for which the $10.00 were to be paid. The fact that plaintiff in error employs a licensed attorney to perform such service for it cannot make the contract legal, for the reason, that if it cannot practice law directly, it cannot do so indirectly by employing a licensed attorney to carry on the business of practicing law for it.

It results that we find no error in the judgment of the court below, and it is affirmed with costs.

In the *United States Title Guaranty Co.* v. *Brown,* (138 App. Div. N. Y. Sup., 542 Judge Kelly, speaking to the point here under consideration, said:

"The profession of the law, one of the oldest known to civilization, involving the most sacred confidence between man and man, with its past of high ideals and service to humanity has in the last quarter of a century suffered much from the inroads of the new financial and business methods in this great land of ours. Whether by ill-advising attempts by corporate employers to dominate and direct atorneys and counsel in the conduct of litigation, whether by so-called title companies or casualty insurance corporations, the old ideals in the relation of attorney and client, which means so much to mankind, have suffered and have been threatened with demoralization. This is wrong the loss of the individual personal relation involved in the attempt by corporations to practice law is so serious to the community that it is against public policy, and I am inclined to think *"malum in se,"* but at any rate there is no question that in this state it is unlawful by force of the statute."

The Associated Lawyers Company, 134 App. Div., 350, the Appellate Division rejected the application of the company for permission "to do a general law and collection business; * * * to make agreements with, and to employ such attorneys at law, * * * as may be desired for the transaction of such business."

The court says:

"While it has never been legal for a corporation to practice law, a system has grown up by which corporations undertake to procure attorneys for the transaction of the law business of its clients, and while the legality of such corporate action to enter into such a business has been universally recognized, and by this legislation it has been prohibited."

In *Buxton* v. *Lietz,* 136 N. Y. Supp., 829; 139 N. Y. Supp., 46, a similar contract was made for the collection of accounts by the Meacham-Buxton Mercantile Agency, which provided for collection without litigation, if possible, and with litigation, if necessary. The court, passing upon the contract, said:

"It cannot be seriously disputed from the records in this case that the plaintiff is engaged in a business which consists of collecting outstanding accounts for clients and when necessary to institute litigation for that purpose. The question to be determined by the court is, can the plaintiff recover a contract like the one at bar, and does that contract contravene the statute? Now, it is well known in legal jurisprudence, that the practice of the law is regulated by statute.

"It is equally well known that by Chapter 882, Laws of 1909 (forming Section 270 of the Penal Law), any person not duly licensed to practice law, who holds himself out as an attorney and counsellor at law, or who attempts to practice such profession is guilty of a misdemeanor. The privilege of practicing law is a special franchise, conferred on those who by earnest and conscientious study and possession the required qualifications are fit to take the constitutional oath of this truly great office.

"Counsel for the plaintiff, however, contends that the plaintiff is not to be likened to a corporation engaged in the practice of law, and again, that the prohibition applied to corporations and not to individuals engaged in the business of a mercantile agency for collection on behalf of clients. This contention, however, is not sound, for the reason that the plaintiff is not an attorney and counsellor at law, and since he can not practice directly, he is prohibited from practicing indirectly by employing an attorney and counsellor at law to institute suits or actions on behalf of his 'clients' when necessary."

"If then in reason and logic, for after all what is law but the perfection of reason, corporations can not practice law, no good reason exists why an individual under an assumed name should be permitted to enter into the practice of law, and turn a noble profession into a business of the mercenary kind. In view of what is said and without touching upon the plaintiff's failure to establish due performance of his contract as therein provided, this court is of the opinion that the plaintiff cannot recover on the contract as a matter of law, because of its illegality, and therefore renders judgment in favor of the defendant and against the plaintiff dismissing the complaint with costs."

In disciplinary proceedings instituted by the New York County Lawyers' Association in the matter of Pace & Stimpson, Attorneys (170 App. Div., 818), Scott, J., says:

"We are therefore clearly of the opinion that the acts which the Corporation Company of Delaware understood to do and did do in this state constituted the practice of law herein and were in direct violation of the law of this state. Whether or not its acts were lawful in Delaware does not clearly appear and does not concern us. It is unlawful in this state it is clear here that the respondents assisted in and furthered them and therefore shared in the doing of the unlawful acts. For this they cannot escape responsibility, even although they erroneously believed that they were doing no wrong.

"Their actions, however, since these charges were made against them, commend them strongly to our consideration. Not only did they frankly meet the charges and stipulate all the facts, but they have severed their relations with the Corporation Company of Delaware, and have discontinued the practice for which they were criticised by the complaining association.

Under these circumstances, while we cannot wholly overlook their acts which clearly amounted to professional misconduct, we find no occasion for administering any further discipline than censure.

"It may be taken therefore as the law of this state that it is unlawful for a corporation whether domestic or foreign, to practice law in this state, and that any member of our bar who assists a corporation in violating the law in this respect, is himself guilty of wrong doing."

And in the matter of Julius A. Newman, 172 App. Div.,

173, an action wherein he by arrangement with a collection agency permitted his services as lawyer to be furnished by the agency upon a division of fees, Scott, J., says:

"The collection agency clearly held itself out as engaged in collecting claims by suit if necessary. Its circular said: 'A 10% fee on all claims, before suit * * * a 20% fee and minimum disbursements on all claims, where suit must be brought.' "

Also:

> Terms for suit—
>
> | | |
> |---|---|
> | On any sum up to $1,000 | 10% |
> | On any sum over $1,000 | 5% |
> | Minimum fee | $5.00 |

"In case of suit, plaintiff is to pay all court costs in advance, in any event, but no fee shall be due the attorney except out of a recovery, unless the claim is contested, and there is extra labor justifying the extra charge. Such must be named and agreed upon. If defendant is to be examined in supplementary proceedings, an extra fee is also charged. No suit is commenced unless authority is given.

"In its letter to respondent it enclosed a complaint verified not by it as plaintiff but as its customer. 'This claim is given to you on a 10% basis and if collected we are to receive one-half of 10% from you. This is for bringing suit, and as far as taking judgment. After that, if necessary, different arrangements will be made with our client for examination of debtor in supplementary proceedings. In another letter enclosing two verified complaints it said: 'It is understood that this claim is taken on a 10% basis with the usual division between offices.' The respondent therefore did promise and give a valuable consideration to the agency as an inducement to placing or in consideration of placing in his hands a demand for the purpose of bringing an action thereon as prohibited by Section 274 of the Penal Law.

"We are clearly of the opinion that the relation was one which this court cannot sanction or approve. An attorney of record will not be permitted to deny that the relation of attorney and client exists between himself and the person for whom he appears and conducts litigation. Nor can this court sanction the splitting of fees by an attorney with layman or a corporation, or a voluntary association not authorized to practice law as an inducement or reward for the procuring of business (*Matter of Clark*, 108 App. Div., 150; affd. 184 N. Y., 222; *Matter of Shay*, 133 App.

Div., 547; affd. on opinion of Ingraham, J., 196 N. Y., 547)."

It seems as though in the issue of July 21, 1930, of the Ohio Law Bulletin and Reporter we find the latest ruling on the same in the State of Ohio, which is the case of *Dworken* v. *The Department of House Owners Association of Cleveland,* which is very elaborate and was an injunction action because some corporation had infringed upon the rights of persons to practice law and was decided June 26, 1930, and concludes that a corporation cannot practice law or agree to practice law for its clients. This undoubtedly, the plaintiff in the action did, which services it had no right to contract for, this contract the defendant herein therefore being void, and it being void of course no liability could accrue as against the defendant in this action.

In as much as the practice of law is not fully yet definitely decided in the state of Ohio, and needs judicial construction, the court feels that a franchise granted to an individual cannot be given to a corporation, regardless of the individuals desires to do so, and neither can the corporation procure the use of the franchise as it is not assignable or transferable and to permit corporations such as the plaintiff, to practice law indirectly it will not be long until the license to practice law will belong to anyone who cares to have it assigned or sold or by them purchased, and will become abused and misused and used for all purposes for which it was not intended.

It is obvious that if an attorney should be disfranchised and could go into the collection business as outlined in the purpose clause of this corporation he could do anything that would be possible disregarding any ethical procedure whatsoever. It is the opinion of this court, in view of the foregoing decisions, that this plaintiff corporation is not entitled to practice law and that the facts adduced from the trial shows that the plaintiff is attempting to collect from the defendant for legal services, therefore this plaintiff has no standing before the court for the amount that they attempt to collect is predicated upon a contract which is void *ab initio.* Judgment is therefore rendered for defendant for costs.