No. 903.

## Eley *v.* Miller.

Fees.—*County Auditor.*—*Ditch.*—*When Chargeable, When not.*—A county auditor can not charge and collect fees for services in relation to his official duties, unless such right is given by statute expressly or by fair implication; and in a proceeding to construct a public ditch, the auditor is not entitled to fees for advertising and posting notices in relation thereto.

Public Officer.—*Charge for Services Relating to Official Duties.*— *Against Public Policy.*—*Recovery.*—Public policy forbids that a pub-

lic officer should perform services in any matter in connection with his official duties and make a charge therefor not provided by statute; and if such a charge be not voluntarily paid, it may be recovered.

From the Adams Circuit Court.

*J. J. M. La Follette* and *O. H. Adair*, for appellant.
*J. T. France* and *J. T. Merryman*, for appellee.

Lotz, J.—The appellant was the plaintiff in the court below. In his complaint, he charged that he was a resident taxpayer and owner of real estate in Adams county, Indiana, and that the appellee was the duly qualified and acting auditor of said county; that while appellee was acting as such auditor, certain public ditches were established under and by virtue of the drainage laws then in force, one of which was known as the "William Miller ditch"; that of the costs of such proceeding the appellee taxed and collected of appellant the sum of $4.75 more than he was entitled to receive, and also added the sum of $1.50 thereto, which he also collected of appellant.

There are other similar allegations with reference to another proceeding known as the "Frederick Hahnet ditch," in which the amount of fees charged to have been illegally collected is stated as $2.20, with the further sum of $1.50 added thereto. It is also alleged that all fees, costs, and moneys so collected were excessive, extortionate, wrongful, and without authority of law; that appellant made demand of appellee to refund the same, but that he refuses so to do.

The appellee answered (1) the general denial, and (2) specially setting out and itemizing the various charges for services.

The court overruled a demurrer to the second paragraph, and appellant then replied in denial.

There was a trial by the court and, at the request of the appellant, the court made a special finding of the facts and stated the conclusions of law thereon.  Appellant excepted to the conclusions of law.  The errors assigned are (1) the overruling of the demurrer to the second paragraph of the answer, and (2) that the court erred in its conclusions of law.  The *gravamen* of the action, as made by the complaint, is the illegal collection of certain fees and moneys.  The second paragraph of the answer sought to show that such fees and charges were legal.  It is only an argumentative denial.  There is no available error in overruling the demurrer to it.

The special finding shows in brief that in the year of 1890 William Miller and others filed their petition for the location of a public ditch, in the auditor's office of Adams county, and with the appellant, who was the auditor of said county; that said petition was presented to the board of commissioners of said county; that said board appointed viewers, and that said viewers made their report to said board, and that said board approved the report of said viewers and ordered that said ditch be constructed; that all such proceedings were regular and according to law; that the appellant, as the auditor of said county, taxed in said proceedings the following costs therein, to wit:

| | |
|---|---|
| Approving and recording bond | $1 00 |
| Recording petition and order of board | 1 50 |
| Certified petition and order of board | 2 00 |
| Recording report | 3 50 |
| Advertising | 2 50 |
| Copy of record | 2 00 |

That said costs were, by the viewers, afterwards duly apportioned among all the land-owners according to their respective interests and assessment for benefits therein;

that the amount apportioned to plaintiff, as his share therein, was $8.12, of which the appellee received as his own costs the sum of $4.75; that, afterwards, the appellee, as such auditor, sold the allotments of work on said ditch, as required by law; that the appellant became a purchaser of one allotment at said sale; that appellee, as such auditor, contracted in writing with the appellant to complete the allotment so bid off by him, and in accordance with the plans and specifications of the same; that the appellee did individually and not as such auditor and officer, make and write for said appellant the said contract and bond, and did exact of and from him the sum of $1.50, and did not exact and take the same as costs in said cause, but simply exacted the same as a remuneration for his work and labor in preparing the same; that the labor in preparing the same was reasonably worth the sum of $1.50.

The findings with reference to the "Hahnet ditch" are similar, except as to the amount of costs taxed and money collected, the items being as follows:

Approving and recording bond .............$1.00
Recording petition and order of board ....... 1.50
Certified copy of petition and order of board.. 2.00
Recording report ......................... 6.50
Advertising.............................. 2.50
Copy of record and specifications............10.00
Posting notices............................ 2.80

That the amount thereof duly apportioned to the appellant as his share thereof was $3.65, of which amount the appellee, as such auditor, received as his own cost, the sum of $2.50.

The court stated the conclusions of law as follows:

"*First.* That the taxation of said costs by the defendant, as such auditor, as set out in the above findings,

was legal and right, and that said defendant, as such auditor, was legally and justly entitled to tax and collect the same.

"*Second.* That the defendant was legally entitled to charge the real value of his services for making and writing the said bonds and contracts mentioned and set out in the above findings, and that his charges therefor were just, equitable, and right, and that the plaintiff ought not recover in this cause."

By the statutes of this State, the board of county commissioners is clothed with various and extraordinary powers. It sometimes exercises judicial functions, and sometimes administrative and executive functions. Sometimes it serves the public interests exclusively, and at others it acts for private individuals only. It is sometimes a court and sometimes an executive body. These functions are often combined in the same proceeding, at the various stages. The act which went into effect September 19, 1881 (sections 4285 to 4317, inclusive, R. S. 1881), gives the power and prescribes the procedure for the location and establishment of public ditches by the board of commissioners. It is apparent, from the whole tenor of the act, that in constructing such improvements the board serves primarily the individual persons whose lands are to be benefited; the public interest is only subserved incidentally. The board is made the medium by which *quasi* public improvements are promoted and secured. The method of procedure is prescribed by the statute. In such proceedings, the board at some stages acts judicially, as a court, and at other stages in an administrative or executive capacity. The clear intent of the statute is that the whole cost of the improvement shall be ultimately borne by the lands benefited, and that no part thereof shall be borne by the county. Whatever acts are done by the board, or services rendered by

any officer thereof, are done at the instigation and for the persons whose lands are to be improved.

It is the settled policy of the legislation of this State to deny to public officers constructive fees and salaries. A public officer can not successfully assert a claim for fees, unless he can produce a statute conferring such right, either in express terms or by fair implication. This has often been decided in this State. *Hawthorne, Sheriff,* v. *Board, etc.,* 5 Ind. App. 280, 30 N. E. Rep. 16; *Stiffler* v. *Board, etc.,* 1 Ind. App. 368; *Board, etc.,* v. *Johnson,* 127 Ind. 238; *Board, etc.,* v. *Barnes,* 123 Ind. 403; *Board, etc.,* v. *Gresham,* 101 Ind. 53; *Noble* v. *Board, etc.,* 101 Ind. 127; *Board, etc.,* v. *Harman,* 101 Ind. 551; *Wright, Aud.,* v. *Board, etc.,* 98 Ind. 88; *Donaldson* v. *Board, etc.,* 92 Ind. 80; *Nowles* v. *Board, etc.,* 86 Ind. 179.

In the cases cited, the effort was to collect fees from the county. Appellee's counsel assert that a different rule prevails when the effort is to compel a public officer to restore money illegally collected from an individual person. In this view we do not concur. A public officer is under no compulsion to remain in office. If he is not satisfied with the compensation allowed by law, he may resign. He has no more right to tax and collect fees from an individual person than he has to tax and collect them from the county, unless he can produce a statute which expressly or by implication confers that right. We do not agree with the first conclusion of law, that the taxation of all costs as set out in the finding was legal and right, and that the auditor was entitled to collect the same. Some of such charges are legal, and there are others for which we find no warrant in the statutes. Appellee's contention is that both of the proceedings set out in the findings are litigations within the meaning of that word as used in section 5909, R. S. 1881, and that the auditor is entitled to charge the same fees as county

clerks in like cases. Conceding, without deciding, that such contention is correct, still there are certain moneys collected as fees, to wit, advertising and posting notices, for which we find no authority in either the statute governing the auditor or the clerk. It is true that section 4293, R. S. 1881, requires the auditor to give notice, both by publication and posting written notices, upon the filing of the report of the viewers, but there is no provision for special compensation for such services. Following the rule adopted by the Supreme Court, in *Board, etc.*, v. *Johnson, supra,* we do not deem it necessary, under the circumstances of this case, to enter upon a discussion as to the legality of the other fees set out in the findings.

As to the second conclusion of law, that the defendant was legally entitled to charge the real value of his services for making and writing the bonds and contracts, we entertain grave doubts. Public policy requires that a public officer should make no charges for performing any services in matter pertaining to or relating to his official duties. The statute expressly prohibits the auditor from practicing law. Sections 2020 and 5901, R. S. 1881.

It may be said that writing and preparing the contract and bond is not practicing law. As the term is generally understood, the practice of the law is the doing or performing services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court. The mere act of scrivener, who writes something dictated by another, would not be practicing law. The statute, however, re-

quires that the auditor shall contract with the party to whom a share or allotment is sold, and to take from such person a bond, to be approved by said auditor, conditioned for the faithful performance of the contract. The auditor, in a certain capacity, is made a party to the contract, and in the case in hearing he made a charge for performing services for himself, as well as for the opposite party. The preparation of the contract and bond are but steps in a legal proceeding depending before the board of county commissioners, of which board the auditor is the clerk.

We are of the opinion that unless he can show that such services are a part of his official duties, and that the statute expressly or impliedly provides a compensation therefor, that he is not entitled to make a charge for such services. There is no pretense that the statute provides any compensation for such services. It may be true that the auditor is under no obligation to perform such services. But public policy forbids that a public officer should perform services in any matter in connection with his official duties and make a·charge therefor not provided by statute. These charges, however, stand upon a different basis from the items designated as fees. The complaint does not proceed upon the theory that such charges were made as fees.

In the case of fees which have been illegally collected, the statute provides that the person from whom the same may have been received shall have a right to recover the same. Elliott's Supp., section 1976.

But if any money was voluntarily paid, not as fees, then no recovery can be had under the findings. There is nothing in the findings to show that such payment was not voluntarily made. *Benson, Admr.,* v. *Christian,* 129 Ind. 535.

For the error in stating the first conclusion of law, the

judgment is reversed, at the costs of appellee, with instructions to grant a new trial, if asked for by appellant.

Filed Sept. 29, 1893.