**J. H. MARSHALL & ASSOCIATES, INC.,**
assignee of Leon Office Machines,
Inc., Appellant,

v.

**William A. BURLESON, Appellee.**

No. 6159.

District of Columbia Court of Appeals.

Argued April 17, 1972.

Decided Dec. 28, 1973.

Rehearing Denied Feb. 7, 1974.

Harry L. Ryan, Jr., Washington, D. C., for appellant.

Francis J. Skiba, Washington, D. C., of the bar of State of Wisc. pro hac vice, by special leave of court, with whom William A. Burleson, Washington, D. C., pro se, was on the brief, for appellee. Lynne D. Perkins, Washington, D. C., also entered an appearance for appellee.

Before KELLY and YEAGLEY, Associate Judges, and HOOD, Chief Judge, Retired.

YEAGLEY, Associate Judge:

This is an appeal from a judgment of the Superior Court of the District of Columbia holding that appellant was engaged in the unauthorized practice of law, permanently enjoining appellant from conducting any further activities of this nature, and dismissing its claim against appellee.[1]

Appellant raises these contentions:

(1) That the Superior Court was without jurisdiction to hear the issue;

(2) That proper procedure was not followed in raising the issue; and

(3) That appellant was not engaged in the unauthorized practice of law.

· The action was begun by appellant, a collection agency, (hereinafter called Marshall) in the Small Claims and Conciliation Branch[2] of the Superior Court of the District of Columbia as assignee of an open account said to be owed by appellee (hereinafter called Burleson) for merchandise purchased by Burleson from Marshall's assignor, Leon Office Machines, Inc.

Burleson, a lawyer, appeared through counsel and filed an answer including an affirmative defense, asserting the debt had been paid in full by accord and satisfaction when appellant's assignor accepted his final payment in full settlement of its disputed claim. He also filed a counterclaim asserting that he (Burleson) was licensed to practice law in the District of Columbia, that Marshall was a collection agency unlicensed and unauthorized to practice law in the District of Columbia, but was intentionally doing so and therefore "stands in contempt of this court"; that Marshall commenced this action on the basis of a colorable assignment so as to permit it to attempt to engage in the unauthorized practice of law which it was doing "intentionally and maliciously," wherefore Burleson claimed $10,000 compensatory and $40,000 punitive damages from Marshall, and sought a permanent injunction to restrain Marshall from engaging in the unauthorized practice of law.

Marshall filed an answer denying the allegations in Burleson's counterclaim and subsequently a motion to dismiss. Burleson then filed an opposition to Marshall's motion to dismiss and also a motion for summary judgment solely with respect to his request for a permanent injunction.

The parties agreed that Marshall conducted its debt collection business as follows:

(1) Marshall was incorporated in the District of Columbia for the purpose of

---

1. The activities enjoined by the Superior Court were:

(1) Soliciting accounts for collection by advertising no fee unless they collect;

(2) Agreeing to collect accounts, by litigation if necessary, without paying any valid, adequate, and legally enforceable consideration for such assignments;

(3) Retaining a contingency fee based on a fixed portion of the amount collected;

(4) Retaining counsel to litigate those agreements, *i. e.,* invalid assignments received on contingency fee bases.

2. This action was commenced in Small Claims Branch of the Superior Court but the oral argument on the contested motions came before, and was decided by, the Superior Court Judge sitting in Civil Calendar Control.

conducting business as an agent for the collection, adjustment, compromise and settlement of debts of all kinds, purchasing accounts receivable, debts and claims of all kinds, and possessing all powers necessary to conduct this business; [3]

(2) Marshall publicly solicits accounts for collection and advertises "no charge unless we collect";

(3) Marshall conducts its collection business by taking purported assignments in its own name without receiving any monetary consideration therefor, and for the sole purpose of effecting their collection;

(4) Marshall prepares statements of claims which it files in the Civil Division of Superior Court or in the Small Claims Branch (if the amount claimed is less than $750), makes payment of court costs, and then notifies its retained attorneys so that they can appear on the designated return date;

(5) Marshall remits to the original creditor two-thirds of the amount collected by the litigation and retains one-third of that amount as its service charge, out of which Marshall pays its retained attorney.

Additionally, at the argument on the summary judgment motion counsel for appellant conceded that Marshall had sole and absolute discretion, either before or after suit, to compromise or settle a claim that it was collecting without consultation with the assignor.

The trial court denied Marshall's motion to dismiss the counterclaim, granted judgment for appellee Burleson on his motion for summary judgment, and dismissed Marshall's complaint finding that it was engaged in the unauthorized practice of law. The court then issued a permanent injunction restraining Marshall from conducting its collection agency business in its usual style.[4] We affirm, but modify the injunction consistent with this opinion. Since the trial court did not reach the issue of damages, that question is not before us.

I

We first consider the jurisdictional argument of appellant and whether the appellee had standing to seek an injunction. As a result of the District of Columbia Court Reform and Criminal Procedure Act of 1970, which became effective February 1, 1971, more than two months prior to the filing of this action, the Superior Court, pursuant to D.C.Code 1973, § 11-921(a)(2), had civil and equity jurisdiction up to $50,000 until August 1, 1973, when such limitation ended. Consequently, the Superior Court had jurisdiction over the civil suit by Marshall and over the counterclaim by Burleson for damages[5] stemming from the alleged wrongful suit against him.[6]

No one denies that a court has an inherent right to make rules governing the practice of law before it.[7] And courts, including those in this jurisdiction, have promulgated rules concerning who may practice law before them.[8] The authority

---

3. Collection agencies in the District of Columbia are not required to be licensed or bonded, as such, but as is the case herein may be licensed as a business corporation under D.C. Code 1973, § 29–901 et seq. *See* note 35, *infra* and accompanying text.

4. *See* note 1, *supra.*

5. It should be noted that the trial court set down for a later hearing the issue as to damages (injury to reputation in the community and costs of defending this suit) and has not taken testimony on this facet of the case.

6. Burleson contended in his opposition to the motion to dismiss that he "has personally been a victim of the defendants [*sic*] unauthorized practice of law." Further, that as an officer of the court, he has a duty to call the unauthorized practice to the court's attention. *See* note 14, *infra.*

7. State Bar Ass'n of Conn. v. Connecticut Bank & Trust Co., 145 Conn. 222, 140 A.2d 863 (1958).

8. Super.Ct.Civ.R. 101 (GS Rule 75); Rule XIII of the Rules of the District of Columbia Court of Appeals Governing the Bar of the District of Columbia, adopted April 1, 1972.

of a court to issue an injunction to remedy a situation over which it has jurisdiction is well recognized in this jurisdiction. This court in discussing the equitable powers of the trial court before the Court Reform Act said in Brown v. Greenwich Lounge, Inc., D.C.App., 225 A.2d 656, 657 (1967):

> Its equitable powers are limited to those necessary to fully and completely exercise its jurisdiction over actions involving personal property or for debt or damages within its $10,000 jurisdictional limit. Thus, where an action is essentially for the recovery of a money judgment within the court's jurisdictional limit, resort may be had to an injunction and accounting to accomplish this result. . . . [9] [Citations omitted.]

Further, it has been recognized that a court has inherent power, by virtue of its existence as a part of the judicial system, to regulate and control the practice of law and to protect the public and the administration of justice by forbidding the unwarranted intrusion of unauthorized and unskilled persons into the practice of law.[10] It has been held repeatedly that even in the absence of statutory enactments, a person engaged in the unlawful practice of law may be enjoined from conducting such activity.[11] Further, it has been held that the unauthorized practice of law constitutes a contempt of court and there seems no doubt of the inherent power of the court to punish such conduct and prevent its recurrence.[12]

Consequently, when it is asserted, and the agreed statement of facts here so reflects, that one is engaging in the unauthorized practice of law before the court, it has not only authority to consider the question and to dismiss plaintiff's suit, but it also has the power and the responsibility to enjoin further activities constituting the unauthorized practice of law.[13] Although such relief is ordinarily sought in actions instituted by bar associations, we agree with the trial court that the issue was properly raised by Burleson.

Canon 3 of the Code of Professional Responsibility of the American Bar Association, adopted by this court,[14] places upon all members of the bar a responsibility to "assist in preventing the unauthorized practice of law." The defendant, a member of the bar of the District of Columbia and an officer of the court, had a duty to bring the activities of Marshall to the court's attention when he became aware of their nature. The court having jurisdiction to consider the charge of unauthorized practice as a defense to plaintiff's action and having jurisdiction of the subject matter, could issue an injunction against such

9. At the time that case was heard the jurisdictional limitation was $10,000 whereas at the time the case at bar was filed it was $50,000.

10. Conway-Bogue Realty Inv. Co. v. Denver Bar Ass'n, 135 Colo. 398, 312 P.2d 998 (1957); In re Baker, 8 N.J. 321, 85 A.2d 505 (1951); In re Fletcher, 71 App.D.C. 108, 107 F.2d 666 (1939); People v. Goodman, 366 Ill. 346, 8 N.E.2d 941, 944, cert. denied, 302 U.S. 777, 58 S.Ct. 138, 82 L.Ed. 601 (1937); Rhode Island Bar Ass'n v. Automobile Serv. Ass'n, 55 R.I. 122, 179 A. 139 (1935).

11. State v. Bonded Collections, Inc., 36 Wis.2d 643, 154 N.W.2d 250 (1967); In re Incorporated Consultants, 6 Ohio Misc. 143, 216 N.E.2d 912 (1965); Nelson v. Smith, 107 Utah 382, 154 P.2d 634 (1944); American Auto. Ass'n v. Merrick, 73 App.D.C. 151, 117 F.2d 23 (1940); Depew v. Wichita Ass'n of Credit Men, 142 Kan. 403, 49 P.2d 1041 (1935), cert. denied, 297 U.S. 710, 56 S.Ct. 574, 80 L.Ed. 997 (1936).

12. Bump v. District Court of Polk County, 232 Iowa 623, 5 N.W.2d 914 (1944).

13. See cases cited at notes 10 and 11, supra.

14. Rule X of the Rules of the District of Columbia Court of Appeals Governing the Bar of the District of Columbia. "[A] lawyer should aid in establishing, as well as enforcing, standards of conduct adequate to protect the public by insuring that those who practice law are qualified to do so." ABA Code of Professional Responsibility, EC 8–7 at 34 (1970). Also see EC 8–5, "a lawyer should reveal to appropriate authorities any knowledge he may have of such improper conduct" (fraudulent, deceptive or otherwise illegal conduct).

practice.[15] When an issue of the unauthorized practice of law was raised by the Attorney General of Kansas in a quo warranto proceeding, the Supreme Court of Kansas said:

> The form in which the matter is called to the court's attention is not so important. Since the court has jurisdiction of the subject-matter, any recognized procedure by which a charge or complaint is entertained, and the one charged is given proper notice, and in which there is a full hearing fairly conducted, would appear to be sufficient. [State ex rel. Boynton v. Perkins, 138 Kan. 899, 28 P. 2d 765, 769 (1943).]

## II

■■ The second argument that Marshall raises on appeal is that Burleson's contention that Marshall is engaged in the unauthorized practice of law, for which he seeks an injunction and damages, cannot be raised by a counterclaim to a complaint on a debt. This method of raising this sort of a claim, albeit unusual, is procedurally proper.

Pursuant to Super.Ct.Civ.R. 13(b):

> A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim if such counterclaim is within the jurisdiction of the court.

This rule is basically identical to Fed.R. Civ.P. 13(b). The purpose of the federal rule, and likewise that of the local rule, is to give the same freedom to the pleading of independent claims by a defendant against a plaintiff as the plaintiff has in pleading claims against a defendant. Old restrictions upon the right to plead counterclaims have been removed.[16]

Marshall, in urging upon us a restrictive reading of this rule, cites Yellowitz v. J. H. Marshall & Associates, Inc., D.C.App., 284 A.2d 665 (1971) and D.C.Code 1973, § 28–3808, to support its position. *Yellowitz,* according to Marshall, narrows the scope of permissive counterclaims against an assignee across the board. However, the holding in that case is clearly limited. *Yellowitz* held impermissive a counterclaim against an *assignee* of a debt based upon the tort of the *assignor,* except where the assignee has specifically agreed to undertake such liability. That question is not present here. In the case at bar, the Burleson counterclaim was not based upon the acts or omissions of the assignor (Leon), but upon the activities of the assignee (Marshall), the plaintiff, appellant herein. The *Yellowitz* limitation relates to torts of the assignor and does not restrict counterclaims based upon the acts of the assignee.

■ The statute which Marshall contends limits the scope of the Burleson counterclaim, D.C.Code 1973, § 28–3808 [17] is inapplicable having been enacted after the commencement of this action.

We hold that Burleson's use of a counterclaim to raise the issue of unauthorized practice of law by the assignee was proper.

## III

The third question presented by this appeal is whether or not the modus operandi of Marshall as a collection agency constituted the unauthorized practice of law.

■ The term "collection agency" is a generic term and can apply to all activities carried on in the pursuit of collecting debts for others. However, as in American Automobile Ass'n v. Merrick, 73 App.D.C. 151, 117 F.2d 23 (1940), we do not question here collection services such as negoti-

---

15. *See* concurring opinion.

16. 3 Moore's Federal Practice § 13.18 (1972). Note, however, that the Superior Court rule does add a limitation on the federal rule to the effect that the counterclaim cannot exceed the jurisdictional limit of the court.

17. Section 4 of the District of Columbia Consumer Credit Protection Act of 1971.

ating, adjusting and settling claims without threat of litigation, or seeking payment by written letter or oral request, nor do we have before us the propriety of legal referral services.[18] Consequently, the operation of a collection agency, in our view, does not in and of itself necessarily constitute the unauthorized practice of law.[19]

The issue raised requires preliminarily a consideration of what constitutes the practice of law. Throughout the years many courts have been presented with that question and have responded in numerous but similar ways. The following passages from opinions of various state courts are well reasoned examples of their view of the problem:

> According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings, and other papers incident to actions and special proceedings, and the management of such actions and proceedings on behalf of clients before judges and courts, and, in addition, conveyancing, the preparation of legal instruments of all kinds, and, in general, all advice to clients, and all action taken for them in matters connected with the law. . . . [In re Duncan, 83 S.C. 186, 65 S.E. 210, 211 (1909).]

> [T]he practice of directing and managing the enforcement of legal claims and the establishment of the legal rights of others, where it is necessary to form and to act upon opinions as to what those rights are and as to the legal methods which must be adopted to enforce them, the practice of giving or furnishing legal advice as to such rights and methods and

the practice, as an occupation, of drafting documents by which rights are created, modified, surrendered or secured are all aspects of the practice of law. . . . [In re Shoe Mfrs. Protective Ass'n, 295 Mass. 369, 3 N.E.2d 746, 748 (1936).]

> A lawsuit is but one process of settling an issue of legal right and wrong. Many are disposed of without suit. But the disposition of such issues for others, by advice and negotiation, for hire, is as much the practice of law as though process and pleadings, with or without trial, were necessary. Counsel as to legal status and rights, and conduct in respect thereto, are as much a special function of the English solicitor and the American lawyer as are diagnosis, prognosis, and prescription are in the special field of medicine. . . . [Fitchette v. Taylor, 191 Minn. 582, 254 N.W. 910, 911 (1934). *See also,* People ex rel. Ill. St. Bar Ass'n v. Peoples' Stock Yards St. Bank, 344 Ill. 462, 176 N.E. 901 (1931); In re Opinion of the Justices to the Senate, 289 Mass. 607, 194 N.E. 313 (1935); Eley v. Miller, 7 Ind.App. 529, 535, 34 N.E. 836 (1893); Depew v. Wichita Ass'n of Credit Men, 142 Kan. 403, 49 P.2d 1041 (1935), cert. denied, 297 U.S. 710, 56 S.Ct. 574, 80 L.Ed. 997 (1936); In re Incorporated Consultants, 6 Ohio Misc. 143, 216 N.W.2d 912 (1965).]

■ Of importance to this consideration is not only the nature of the activities involved but also the relationship between the collection agency and the attorneys who sue on the claim. A collection agency

---

18. We by no means wish to indicate a contra opinion to Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964). There the Supreme Court held that the union being a membership organization, its activities in this regard in behalf of its members were "clearly within the protection of the First Amendment." The case at bar does not present constitutional considerations. Many of the authorities cited herein predated *Brother-*

*hood,* yet none were cited or discussed therein, presumably because of the difference in issues.

19. American Auto. Ass'n v. Merrick, *supra* note 11; Cohn v. Thompson, 128 Cal.App. Supp. 783, 16 P.2d 364 (1932); Depew v. Wichita Ass'n of Credit Men, *supra* note 11; State v. Dudley & Co., 340 Mo. 852, 102 S.W. 2d 895 , cert. denied, 302 U.S. 693, 58 S.Ct. 12, 82 L.Ed. 535 (1937).

cannot properly interpose itself between a creditor and an attorney seeking to collect the creditor's claim. To do so either directly or indirectly, by an assignment or otherwise, has been held to be the unauthorized practice of law.[20]

The Congress has by statute, D.C.Code 1973, § 28–2303, provided that the assignee of a debt "may maintain an action thereon in his own name". Super.Ct.Civ.R. 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest" and that "a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought". Consequently, when a valid assignment is undertaken, the assignee is authorized by statute and court rule to conduct the litigation in his own name as the real party in interest.

The assignment in this case, albeit a limited one,[21] appears to be valid on its face.[22] Assuming that appellant thereby acqiured the right to cause suit on the debt to be brought in its own name, neither answers nor eliminates the question as to whether by obtaining the assignment on a contingent fee basis and in bringing the action as it did, appellant was engaged in the unauthorized practice of law. We note that

several jurisdictions have refused to recognize the validity of such assignments. People v. Securities Discount Corporation, 361 Ill. 551, 198 N.E. 681 (1935); Bump v. District Court of Polk County, 232 Iowa 623, 5 N.W.2d 914 (1944); Bay County Bar Ass'n v. Finance System, Inc., 345 Mich. 434, 76 N.W.2d 23 (1956); State v. James Sanford Agency, 167 Tenn. 339, 69 S.W.2d 895 (1934).

 In enacting the statutory provision allowing an assignee to sue in his own name, Congress could not have intended the statute to be utilized to evade the prohibition against the unauthorized practice of law by laymen, but rather only sought to allow suit on a debt, which is assigned for procedural convenience, to be brought in the name of the assignee.

The courts themselves will not permit laymen to appear in court in a representative capacity. The policy of the courts and the legislature in this regard may not be circumvented by the subterfuge of a layman taking an assignment to permit him to carry on the *business* of practicing law.[23]

With regard to the activities of those who attempt to collect debts for others,

**20.** State v. Dudley & Co., *supra* note 19; In re Incorporated Consultants, *supra* note 11. In People v. Securities Discount Corp., 361 Ill. 551, 198 N.E. 681 (1935), it was held that employment of an attorney by a collection corporation which collected the claim on a contingent fee basis from the client constituted the unauthorized practice of law; Bump v. Barnett, 235 Iowa 308, 16 N.W.2d 579 (1944), where it was held that the bringing of suit under an assignment for collection by an attorney employed or paid by a collection agency was the unauthorized practice of law; Depew v. Wichita Ass'n of Credit Men, *supra* note 11, where it was held that the furnishing of business to an attorney by the collection department of a credit men's association, with the retention of a portion of the attorney's fee, constituted the unauthorized practice of law.

**21.** The assignment herein purports to assign the debt to J. H. Marshall & Associates, Inc. "with full authority in the premises, in its name, to effect collection thereof and/or to

file suit." Marshall does not become the actual owner of the claim as it would under an outright assignment for a valid consideration, for it only purports to have acquired a contingent interest in one-third of the claim.

**22.** People v. Securities Discount Corp., *supra* note 20, where it was held that such an assignment between creditor and collection agency was a fraud, sham and mere subterfuge to enable the agency to maintain suit in its own name, which suit was to be handled by an attorney employed not by the assignor but by the assignee (the collection agency) and that such a state of affairs constituted the unauthorized practice of law; Bump v. District Court of Polk County, *supra* note 12; Bay County Bar Ass'n v. Finance System, Inc., 345 Mich. 434, 76 N.W.2d 23 (1956); State v. James Sanford Agency, 167 Tenn. 339, 69 S.W.2d 895 (1934).

**23.** Nelson v. Smith, *supra* note 11, at 639 of 154 P.2d.

with or without an assignment, it has been held that a collection agency may not threaten legal action on behalf of another in the attempt to collect claims.[24] It has also been held that one who confers with clients, advises them as to their legal rights, and then takes the business to an attorney and arranges with him to look after it in court is engaged in the practice of law.[25]

In Richmond Association of Credit Men v. Bar Association, 167 Va. 327, 189 S.E. 153 (1937), an incorporated credit association was held to be engaged in the unlawful practice of law where it was clear that the association employed a lawyer to effect collections, had the right to discharge him and to supervise his conduct, gave orders to and received reports from him, fixed his compensation and was the real master in the situation. This conclusion was reached despite language in the collection contract that it (the collection agency) was acting as agent for the creditor. The court found that the association, by placing itself between the creditor and the lawyer and by assuming and maintaining control over the lawyer, had absorbed and destroyed the relation of direct personal confidence and responsibility which ought to exist between attorney and client.

A few years after that decision a case arose in this jurisdiction wherein a committee of the Bar Association of the District of Columbia for the suppression of the unauthorized practice of law obtained an injunction against certain practices of the American Automobile Association, wherein the Association sought to collect

small claims for its members arising out of automobile accidents. The Federal Circuit Court modified the decree on appeal. While recognizing that it found no case in which it was held that the collection or arbitration of claims alone amounted to the practice of law, the court observed: "But the giving of advice prior to collection of a claim and the urging of legal propositions in discussions with the person from whom collection is attempted does involve the practice of law and may be performed only by lawyers . . . ." Consequently, the court found the operation of appellant's claim department to be unlawful. American Automobile Ass'n v. Merrick, *supra* [26], 73 App.D.C. at 153, 117 F.2d at 25. *See also* Bay County Bar Ass'n v. Finance System, *supra*.

In sustaining a suit for an injunction instituted by the Utah State Bar Association, the Utah Supreme Court explained the foregoing rationale in this manner:

The fact that the defendants in some instances employ a regularly licensed attorney to prepare a suit does not make their conduct legal. One cannot do through an employee or an agent that which he cannot do by himself. . . . The prohibition against the practice of law by a layman . . . applies alike to the practice by a layman directly and in person and to the indirect practice through an agent or employee. It is immaterial that said layman may select duly licensed attorneys as his agents or employees through whom he practices law. If the attorney be in fact the agent or employee of a layman, his act is that

24. Bump v. Barnett, *supra* note 20; State v. Dudley & Co., *supra* note 19; In re Incorporated Consultants, *supra* note 11.

25. State ex rel. Boynton v. Perkins, *supra*, quoted with approval in Depew v. Wichita Ass'n of Credit Men, *supra* note 11. *See generally* 27 A.L.R.3d 1152, 1155 (1969); New Mexico v. Credit Bureau of Albuquerque, Inc., 514 P.2d 40 (N.M.1973).

26. The case was cited by appellant as holding that control of an attorney by an intermediary, *i. e.*, an association or union, does not constitute the unauthorized practice of law. However, the court was considering a different type of representation, *i. e.*, representation of "a member in cases which involve the interest of the membership as a whole, or of a substantial part" adding "in circumstances in which its own interests are involved through the interest of the whole or a large portion of its membership." The decree of the trial court was modified only in this respect.

of the layman (his principal). Such principal would be engaging in the illegal practice of law if he through such an agent rendered legal services to a third party for compensation and as a regular and customary business practice.[27]

In a more recent case which the trial court here felt was "on all fours" with the case at bar, the Supreme Court of Wisconsin, in upholding a complaint of the State Bar Association seeking an injunction against the unauthorized practice of law said:

> Thus we have a situation where the defendants, La Belle, the individual, and Bonded Collections, Inc., the corporation, advise the creditor when to start a lawsuit. Upon taking a limited assignment the defendants hire an attorney who, at their direction, commences suit. The direction of lawsuit, defendants admit, is vested in them not in the creditor who is the true client. If the suit is successful, the collection agency pockets a fee for services rendered. We conclude that habitual conduct of this nature for a fee constitutes the practice of law.[28]

█ From the aforementioned cases one point can readily be gleaned: the agency may not solicit the claim for legal action on a contingent fee basis; may not advise the creditor when to start suit; and may not employ an attorney to institute and carry on the litigation under the control and direction of the agency to enforce the legal rights of the creditor.[29]

██ The taking of an assignment under the circumstances and conditions as present themselves here cannot change the basic fact that appellant is providing legal advice and services to another for a profit on a contingent fee basis. Simply because appellant utilizes an attorney, hired by the corporation, to actually present himself in court does not remove the appellant from the sphere of unauthorized practice. Since, as we have stated, the taking of an assignment in order to circumvent the prohibitions against unauthorized practice will not accomplish that goal, the fact that an agent of the unauthorized practitioner, who is himself authorized to practice law, actually performs some legal services does not remove the taint from the entire scheme. It is axiomatic that one cannot do through an employee or agent that which he cannot do himself.

> [W]e cannot escape the conclusion that engaging in the business of representing the interests of assignors and controlling the proceedings to be taken in suits on assigned claims in which assignors retain an interest, as done by defendants, is engaging in the practice of law. When this is done by one not licensed as an attorney it constitutes the unauthorized practice of law whether done by him in person or through his agent, regardless of whether the latter be a layman or a licensed attorney. [Bay County Bar Ass'n v. Finance System, Inc., *supra* at 29 of 76 N.W.2d (citations omitted).]

Procedures, as were followed here by Marshall, result in a usurpation of the real client's role in the management of *his* lawsuit as well as the role of the attorney in advising the client to sue. The end product is that the credit agency, Marshall, retaining a contingent fee and advancing costs, sells the services of a lawyer, whom it controls and directs, thereby destroying the privity between attorney and client.[30]

27. Nelson v. Smith, *supra* note 11, at 640 of 154 P.2d.

28. State v. Bonded Collections, Inc., *supra* note 11, at 256 of 154 N.W.2d.

29. Bump v. Barnett, *supra* note 20; State v. Dudley & Co., *supra* note 19; Bay County Bar Ass'n v. Finance System, Inc., *supra* note 22; Nelson v. Smith, *supra* note 11; State v. James Sanford Agency, *supra* note 22.

30. Likewise, this court has held that a collection agency not licensed as a real estate broker was precluded from bringing an action for unpaid rent under a statute requiring real estate brokers to be licensed and prohibiting

Collection agencies perform services which are both convenient and useful in the business field, but in the course of carrying on that business they must guard against engaging in activities that constitute the practice of law.

The public has an interest in the protection of the relationship of trust and confidence that exists between an attorney and his client. An attorney at law is a specialist, well trained and learned in the profession and sworn as an officer of the court to maintain high standards in accordance with a court approved Code of Professional Responsibility [31] designed to protect the public. The preparation of pleadings, the giving of legal advice regarding the settling of claims or the institution of suit are practices which, in the interest of the public, have historically been reserved to the trained professional.

Recognizing this, and its duty to protect the public, the American Bar Association in concert with various business and professional groups issues Statements of Principles with Respect to the Practice of Law. One such group working with the ABA in this regard is the collection industry. The statement of principles most recently issued by the National Conference of Lawyers and Collection Agencies is a persuasive indication of the mutual feeling of both the bar and the collection industry that there is a need to define what are proper and what are improper collection practices.[32]

The following prohibited practices set forth in the statement bear directly upon the issues before us:

1. [T]he agency may not:

(a) Furnish legal advice or perform legal services or represent that it is competent to do so, or institute judicial proceedings on behalf of creditors or other persons;

. . . . . .

(c) Solicit and receive assignment of accounts for the purpose of suit thereon;

. . . . . .

(e) Solicit accounts for the purpose of having any legal action or court proceedings instituted thereon or solicit accounts for any purpose at the instigation of any attorney;

(f) Employ or terminate the services of attorneys or arrange the terms of compensation for such services on behalf of creditors without written authority to do so;

(g) Intervene between creditor and attorney in any manner which would control or exploit the services of the attorney or which would direct those services in the interest of the agency;

(h) Demand or obtain in any manner a share of the proper compensation for services performed by an attorney in collecting an account, irrespective of whether or not the agency may have previously attempted collection thereof.

. . . . . .

4. [T]he attorney shall be free at all times to communicate with the creditor and provided further (i) that the agency may not attempt to control or in any wise suggest or imply that it has any right to control the actions of the

the bringing of a suit growing out of real estate activities by an unlicensed corporation. Harrison v. J. H. Marshall & Associates, Inc., D.C.App., 271 A.2d 404 (1970).

31. Rule X of the Rules of the District of Columbia Court of Appeals Governing the Bar of the District of Columbia.

32. Unfortunately, we did not have the benefit of an amicus curiae. Prior to the scheduled

argument in this case, the Clerk by direction of the court, communicated with the Unauthorized Practice of Law Committee of the Bar Association of the District of Columbia and the American Collectors Association, Inc., indicating the court would welcome the filing of briefs amicus curiae, but none was forthcoming. We thought their views would have been useful.

attorney or otherwise interfere with the attorney-client relationship between the creditor and the attorney, and (ii) that decisions as to the manner in which the claim is to be handled by the attorney, whether suit is to be brought, the claim is to be compromised or settled, whether the claim is to be returned, and any other matters requiring the decision of the creditor shall in each instance be left solely to the creditor and the attorney in direct communication with each other when the attorney so desires and the attorney shall be so advised . . . .[33]

The Code of Professional Responsibility of the American Bar Association, adopted by this court as indicated in note 14, *supra,* sets forth under Canon 3 ethical considerations why the unauthorized practice of law should be prevented. They are:

EC 3-1 The prohibition against the practice of law by a layman is grounded in the need of the public for integrity and competence of those who undertake to render legal services. Because of the fiduciary and personal character of the lawyer-client relationship and the inherently complex nature of our legal system, the public can better be assured of the requisite responsibility and competence if the practice of law is confined to those who are subject to the requirements and regulations imposed upon members of the legal profession.

EC 3-8 Since a lawyer should not aid or encourage a layman to practice law, he should not practice law in association with a layman or otherwise share legal fees with a layman. . . .[34]

Note 1 under Canon 3 states:

"The condemnation of the unauthorized practice of law is designed to protect the public from legal services by persons unskilled in the law. The prohibition of lay intermediaries is intended to insure the loyalty of the lawyer to the client unimpaired by intervening and possibly conflicting interests." Cheatham, Availability of Legal Services: The Responsibility of the Individual Lawyer and of the Organized Bar, 12 U.C.L.A.L.Rev. 438, 439 (1965).

Marshall further contends that as a result of the grant of a corporate charter from the District of Columbia to conduct its collection business and to do what is necessary to carry out its purposes, its activities are sanctioned by the charter and the relevant provisions of the D.C.Code applicable to corporations. Thus, Marshall reasons that its operations, being condoned by the Congress acting as the legislative body for the District, do not constitute the unauthorized practice of law. This contention stretches the cloak of the corporate charter far beyond the language and the intent of Congress.[35]

The powers of appellant corporation enunciated in its charter were never in-

---

33. 5 Martindale-Hubbell Law Directory 63C (1973). These principles are a follow-up to "The Model Act to License and Regulate Collection Agencies", agreed upon by this National Conference in 1964. The groups participating were:
Associated Credit Bureaus of America;
American Collectors Association;

National Association of Credit Management;
Commercial Law League of America; and
The American Bar Association.
Copies of this Act are available from the Commercial Law League of America or the American Bar Association.

34. The trial court suggested in its opinion that the "retained" attorneys risk unethical conduct by assisting appellant in the unauthorized practice of law.

35. Marshall argues that in May 1957 pursuant to D.C.Code § 29-904 it was granted the specific power to:
A. "Sue and be sued, complain and defend in its corporate name";
B. "Purchase, take . . . or otherwise acquire, and to own, hold, . . . and otherwise deal in and with real and personal property, or any interest therein, . . ." and
C. "To have and exercise all power necessary or convenient to effect any or all of the purposes for which the corporation is formed." [Now D.C.Code 1973, § 29-904(b), (d) and (o).]

## 600

tended to authorize it to engage in the practice of law, to sue in behalf of another or to solicit assignments of claims for that purpose. Neither were they intended to legalize activity that otherwise would be illegal. Congress has never attempted, nor demonstrated any inclination, to usurp the power of the courts in the regulation of the unauthorized practice of law. Such control always has been vested in the judicial system. The Corporation Act in the D.C.Code, although granting broad powers to corporations to carry on their businesses, does not grant either specifically or by implication authority for a corporation to pursue the practice of law. Corporate form gives no greater latitude in this area than does noncorporate form.[36]

We have examined what constitutes the unauthorized practice of law as enunciated by various state courts; what constitutes the practice of law generally in reference to collection agencies, and in particular in reference to the functions and activities pursued by appellant in the course of its collection business. We hold that J. H. Marshall & Associates, Inc. is engaged in the practice of law and under our judicial system is without authority to do so. Such practices cannot be condoned by this court. We recognize the right of appellant to solicit and to attempt to collect claims, to charge a fee therefor, and to purchase claims outright for a valid and legally enforceable consideration. However, its activities, as we have seen, go well beyond the permissible area. Accordingly, we agree with the trial court that the activities of appellant insofar as they constitute the unauthorized practice of law must be enjoined. However, we modify the order of the trial court so that the injunction will read as follows:

Appellant is hereby enjoined, from and after this date, from: advising creditors when to bring suit; soliciting or receiving assignments of claims or debts for collection under which payment, to the assignor

or creditor, is dependent on collection from the debtor and which contemplates or authorizes the enforcement of collection by suit, brought in the name of either party, by an attorney at law; employing a lawyer on behalf of the creditor or an assignor without specific written authority to do so; interposing itself between the creditor and the lawyer handling legal action on the claim; instituting or maintaining legal actions for others; and appropriating to its own use as attorney fees sums adjudged against debtors on assigned claims except when such judgment is its bona fide property.

So ordered.

KELLY, Associate Judge (concurring in the result):

The question of appellee's standing, by way of a counterclaim, to seek an injunction against appellant's unauthorized practice of the law is a troublesome one, for it appears that almost universally, in those cases which allow such suits for a permanent injunction, counsel are pursuing class actions in behalf of themselves and other affected members of the legal profession or are joined by a duly recognized bar association or grievance committee. Nevertheless, in New Jersey State Bar Ass'n v. Northern N. J. Mtg. Asso., 22 N.J. 184, 123 A.2d 498, 504 (1956), where it was held that a bar association had standing to enjoin unauthorized practice of the law, but that individual attorneys may have no such standing, the court said:

Attorneys enjoy rights peculiar to themselves, not enjoyed by those outside the profession, but only as an incident to the public welfare. And because of the incidental nature of their right, as individual members of the bar they have no standing to complain *in the absence of specific injuries to themselves* arising from alleged illegal practice, and no basis for any claim of irreparable damage. . . . [Emphasis supplied.] [1]

36. Buxton v. Lietz, Mun.Ct., 136 N.Y.S. 829, aff'd Sup., 139 N.Y.S. 46 (1913).

1. *See also* Touchy v. Houston Legal Foundation, 432 S.W.2d 690 (Tex.1968).

It seems then, on the basis of settled authority, that appellee may not have brought an original suit in equity to enjoin appellant from the unauthorized practice of the law but that he could raise the issue as a defense to a suit against him for collection of a debt, there being at that time a showing of specific injury to himself. Once raised and decided, it is my opinion that in disposing of this issue the trial court was not limited to a dismissal of the complaint, or to holding appellant in contempt, but that it could in these unique circumstances permanently enjoin appellant from the unauthorized practice of the law either *sua sponte* or at appellee's request.

HOOD, Chief Judge, Retired (concurring in part and dissenting in part):

I agree that under the authorities cited the conduct of appellant in bringing and prosecuting this action against appellee constituted the unauthorized practice of law, and that this was available to appellee as a defense to the action against him. But I do not agree that appellee had a right to bring and maintain his counterclaim for an injunction restraining appellant from engaging in the unauthorized practice of law.[1]

Assuming, as the court says, that under present rules a defendant has the same freedom of pleading independent claims against a plaintiff as a plaintiff has against a defendant, we must view appellee's counterclaim as a separate and independent claim. So viewed I do not think it can be sustained.

In his counterclaim appellee alleged he is licensed to practice law and has an active law practice, but he made no allegation that appellant's activities interfered with or adversely affected his practice. He did not, and likely could not, allege that his counterclaim was brought on behalf of the legal profession. What then gives appellee standing to bring and prosecute his counterclaim?

In Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), the Supreme Court makes plain that standing to invoke the judicial process, except in cases of specific statutory authorization, depends upon whether the party has a personal stake in the outcome, that economic injury furnishes the foundation for standing to sue, and that a special interest in the outcome is not sufficient. As appellee has alleged no economic injury to himself and apparently relies only on his special interest as an individual member of the bar, I feel he has no standing to bring the counterclaim.

The court's opinion cites numerous cases where unauthorized practice of law was enjoined, but the actions in those cases were brought by the attorney general of the state or by a bar association or a committee of a bar association having some official or semi-official standing. An example of this type of action is American Automobile Ass'n v. Merrick, 73 App.D.C. 151, 117 F.2d 23 (1940), where the action was brought by the Committee on the Suppression of Unauthorized Practice of Law of the Bar Association of the District of Columbia. As noted in the concurring opinion, it has been held that a state bar association has standing to maintain such an action, but a single member of the bar has no such standing in the absence of showing specific injury to himself. New Jersey State Bar Ass'n v. Northern New Jersey Mtg. Assoc., 22 N.J. 184, 123 A.2d 498 (1956). *See also* Delaware Optometric Corp. v. Sherwood, 36 Del.Ch. 223, 128 A.2d 812 (1957).

It should be observed that when this action was filed and heard, admission to the bar in the District of Columbia was a function of the United States District Court for the District of Columbia.[2] That

---

1. I am not referring to that part of the counterclaim which sought $50,000 in damages. That part of the counterclaim does not appear to have been acted upon by the trial

court and it plays no part in the present appeal.

2. D.C.Code 1967, § 11–2101 et seq.

court recognized the District of Columbia Bar Association's Committee on Suppression of Unauthorized Practice as a proper party to seek the enjoining of unauthorized practice. American Automobile Ass'n v. Merrick, *supra*. As of April 1, 1972, this court was authorized to make rules for examination, qualification and admission to its bar, and members of the bar of this court became eligible to practice in the District of Columbia courts.[3] Under its newly acquired authority this court established a unified bar of the District of Columbia, and, among other things, established a Committee on Unauthorized Practice of Law, and provided that unauthorized practice is "subject to injunctive relief in a proceeding to be commenced by the Committee on Unauthorized Practice."[4] It appears to me that in this jurisdiction there is a clearly recognized practice that actions to enjoin unauthorized practice of law should be brought by a committee of the bar and not by an individual member of the bar. Leaving aside the question of standing to sue, the established procedure of committee action, after due investigation, leads to a more orderly process than indiscriminate filing of actions by individual lawyers.

Finally, I question the jurisdiction of the trial court to issue the injunction. As before noted, the injunction was issued at a time when control over the practice of law was vested in the United States District Court. While I recognize the authority of the trial court "to maintain its freedom from unauthorized practice of the law,"[5] and its power to punish for contempt one who is guilty of unauthorized practice of law in that court,[6] the court here enjoined many activities outside the court, and this, it seems to me, was an infringement on the prerogative of the District Court at that time to regulate the practice of the law in the District of Columbia.

3. D.C.Code 1973, § 11–2501 et seq.

4. *See* our rule 46B.

In my opinion when the court sustained appellee's defense to appellant's action, it granted him all the relief to which he was entitled, and the counterclaim should have been dismissed. If so inclined, the trial court could have called upon the appropriate bar committee to investigate appellant's activities and take such action it deemed best.

For the foregoing reasons I would hold that the injunction was improperly issued.

5. In re Brown, 147 U.S.App.D.C. 156, 166, 454 F.2d 999, 1009 (1971).

6. Heiskell v. Mozie, 65 App.D.C. 255, 82 F.2d 861 (1936).